*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0217p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

ROBERT MERRIWEATHER,

        *Plaintiff-Appellee,*

     *v.*

T. A. ZAMORA, *et al.,*

        *Defendants-Appellants.*

No. 08-1570

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-71706—Gerald E. Rosen, Chief District Judge.

Argued and Submitted: December 5, 2008

Decided and Filed: June 24, 2009

Before: SILER and GIBBONS, Circuit Judges; STAMP, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Michael E. Robinson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. **ON BRIEF:** Michael E. Robinson, Thomas M. Bondy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Robert Merriweather, Aurora, Illinois, *pro se.*

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge. Seven defendants who worked in the mailroom at the Milan, Michigan Federal Detention Center appeal from the order of the district court refusing to dismiss plaintiff Robert Merriweather's *Bivens* complaint based upon qualified immunity. *See Bivens v. Six Unknown Named Agents of the Federal*

--------

[*]The Honorable Frederick P. Stamp, Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

*Bureau of Narcotics*, 403 U.S. 388 (1971). The defendants argue that the district court improperly denied qualified immunity because they violated no clearly established constitutional right of Merriweather's and their actions, if not a reasonable application of the training they received, do not rise above mere negligence. For the following reasons, we hold that the district court erred in refusing to dismiss Merriweather's suit against Scott Boudrie, James L. Davenport, Jr., and Frank Finch and therefore reverse the district court's denial of summary judgment as to those defendants. We affirm the district court's denial of qualified immunity as to defendants T. A. Zamora, Steve Culver, Don Vroman, and Brian Dutton and remand this case for further proceedings.

## I.

This is a *Bivens* action in which former federal prisoner Robert Merriweather filed suit to challenge the actions of the mailroom employees at the federal prison in Milan, Michigan. Merriweather alleged in his original May 12, 2004, complaint that numerous prison employees routinely opened and read his mail outside of his presence even though the mail was marked properly as "legal mail" or "special mail" under the appropriate Bureau of Prison ("BOP") regulations. Merriweather attached forty-one separate pieces of mail to his complaint to support his allegations that prison employees had opened his legal mail in violation of his rights under the First, Fifth, and Sixth Amendments. The complaint alleges that despite Merriweather's constant protests, prison employees refused to stop opening his legal mail. Merriweather specifically alleges that mailroom supervisor T. A. Zamora told Merriweather upon hearing Merriweather's objections, "[T]his is Milan and we do it our way here." (Compl. at 2.) When Merriweather provided Zamora with a copy of this court's decision in *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003) (upholding a jury verdict for a prisoner in a § 1983 suit alleging the opening of legal mail in violation of constitutional protections), Merriweather alleges Zamora responded, "[W]e donot [*sic*] follow case laws [*sic*], we only follow BOP policy." (Compl. at 2.) The complaint seeks injunctive relief as well as compensatory and punitive damages.

Merriweather's amended suit names a total of seventeen defendants.[1]  The district court dismissed defendants John Hemingway, H. J. Marberry, G. L. Hershberger, and Harrell Watts by an order dated August 23, 2004.  The district court then referred the case to a magistrate judge.  Zamora filed a motion to dismiss, *see* Fed. R. Civ. P. 12(b)(6), asserting that none of the forty-one pieces of mail at issue were labeled properly; and thus, prison employees correctly opened and read them.  The magistrate judge recommended granting Zamora's motion in part, agreeing that the claims associated with envelopes 1, 2, 4, 15, 16, 20, 23, 25, 29, 34, 37, 38, 39, 40, and 41 could not succeed.  Each of these pieces of mail came from either the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of the United States District Court for the Northern District of Indiana, or the United States Attorney for the Northern District of Indiana.  The magistrate judge found that while this court's decision in *Sallier*, 343 F.3d at 877, held that such mail could enjoy constitutional protection, the lack of proper labeling in violation of BOP policy meant that Merriweather could not claim constitutional protection for those envelopes.  However, the magistrate also refused to grant Zamora qualified immunity with regard to the remaining envelopes, finding that our decision in *Sallier* controlled and established a clear constitutional right enforceable via a § 1983 or *Bivens* suit.  The magistrate judge further found that Merriweather's allegations concerning Zamora's reaction to Merriweather's protests indicated that the supervisor's actions went beyond mere negligence.  The district judge adopted the magistrate judge's recommendations *in toto*.

A second motion, this time on behalf of all thirteen remaining defendants, sought summary judgment against Merriweather on all remaining claims.  In their motion, the defendants asserted that nearly all of the remaining envelopes at issue were labeled improperly and therefore not subject to any of the protections provided legal mail.  The defendants did admit that four envelopes – envelopes 7, 8, 22, and 35 – were labeled

---

[1]Those defendants are Milan mailroom manager T. A. Zamora; former warden John Hemingway; current warden H. J. Marberry; Bureau of Prisons Regional Director G. L. Hershberger; Bureau of Prisons Administrator of Inmate Appeals Harrell Watts; and Milan prison employees John Aylward, Harry Baugher, Scott Beaudrie, Daniel Bridge, Steve Culver, James Davenport, Kevin Doaks, Brian Dutton, Dena Ellis, Frank Finch, Kimberly Tomich, and Don Vroman.

properly but characterized their opening as "isolated errors." (Def. Br. at 30.) Renewing their argument from the prior motion, the defendants asserted that all Merriweather could prove was mere negligence and that the allegations were insufficient to find that a constitutional violation occurred. The defendants also claimed that Milan mailroom staff did treat envelopes 27, 28, and 36 as special legal mail despite Merriweather's claims to the contrary.

On February 12, 2008, the magistrate issued his Report and Recommendation concerning the defendants' renewed summary judgment motion. The magistrate agreed with the defendants' argument that additional claims should be dismissed because the labeling on the envelopes failed to comply with BOP policy. The magistrate recommended that the claims associated with envelopes 3, 5, 6, 11, 12, 19, and 32 should fail because no attorney's name appeared on the envelope. The magistrate refused to dismiss any of the other claims associated with the remaining envelopes so that Merriweather's claims regarding envelopes 7, 8, 10, 13, 14, 17, 18, 21, 22, 24, 27, 28, 30, 31, 33, 35, and 36 survived.[2]

Turning to the issue of whether the individual defendants were entitled as a matter of law to qualified immunity, the magistrate recommended that summary judgment issue in favor of Harry Baugher, Daniel Bridge, Kevin Doak, and Kimberly Tomich because their employment duties did not include inspecting legal mail. The magistrate further recommended that Merriweather's claims against defendants Dena Ellis and John Aylward should be dismissed because they only worked in the mailroom on days when the volume was particularly heavy, and their following full-time mailroom employees' advice as to how to enforce the policy was not objectively unreasonable.

---

[2]Both the magistrate's recommendation and the district court's order incorrectly list the status of Merriweather's claims as to envelopes 27, 28, and 36 simultaneously as dismissed on summary judgment and surviving the government's motion. The text of the magistrate's order, adopted by the district court, makes it clear that the claims with regard to these envelopes continue because of a factual dispute as to whether or not prison officials opened them in Merriweather's presence. Additionally, the dispositions as to envelopes 9 and 26 do not appear in the record. The text of the order suggests that the district court dismissed the claims as to those envelopes because they do not appear as part of the seventeen remaining claims. Because they lack any "special mail" or "legal mail" stamp, envelopes 9 and 26 do not conform to BOP policy and cannot be the subject of a valid claim. 28 C.F.R. § 540.19(b). We therefore find that the district court properly dismissed the claims associated with these envelopes.

However, the magistrate refused to recommend dismissal as to the claims against defendants Davenport, Dutton, Beaudrie, Finch, Culver, Zamora, and Vroman because they either regularly worked in the mailroom and unreasonably applied BOP policy or because they were aware of Merriweather's complaints and unreasonably failed to act. The district court adopted the magistrate's recommendations in full. The defendants timely filed their appeal contesting the district court's refusal to grant qualified immunity to the seven remaining defendants. Merriweather did not appeal any of the district court's adverse rulings.[3]

## II.

## A.

We have jurisdiction over this appeal pursuant to the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding that "a district court's denial of a claim of qualified immunity . . . is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291."). Before turning to the qualified immunity analysis, we must first consider whether any of the contested pieces of mail qualify as properly labeled legal mail. *See Sallier*, 343 F.3d at 878. Making this determination first allows us to make certain that there are viable claims to which the qualified immunity analysis applies and informs us in any resulting analysis. The question of whether a piece of mail qualifies as legal mail under the BOP regulations is a question of law, which we review *de novo*. *See id.* The defendants contend that the district court improperly allowed Merriweather's claims to proceed with regard to the contested thirteen pieces of mail. For ease of analysis, we have grouped the envelopes according to the defendants' challenges on appeal.

---

[3]The district court also dismissed Merriweather's claim for injunctive relief as moot because Merriweather left federal custody on August 30, 2007.

**1.**

The first set of envelopes we will consider are those the district court labeled envelopes 27, 28, and 36.  Each of these three envelopes is from attorney Eric M. Schwing and clearly declares that Schwing is an "Attorney at Law."  Each also contains the "Special Legal Mail" stamp.  The defendants admit that these envelopes are properly labeled legal mail but allege that they did not mishandle these envelopes.  The affidavit of employee James L. Davenport, Jr., states that Davenport delivered envelope 28 to Merriweather and opened it in Merriweather's presence, as the regulations require.  *See* 28 C.F.R. § 540.18(a) (stating that "[t]he Warden shall open incoming special mail only in the presence of the inmate").  Attached to the affidavit is a copy of the mail delivery sheet containing a stamp showing the date and time of delivery and bearing both Davenport's and Merriweather's signatures.  Merriweather did not present additional information to support his assertion that prison employees delivered envelope 28 improperly following the submission of Davenport's affidavit.  It is well established that when a summary judgment motion is properly supported via an affidavit, "an opposing party may not rely merely on allegations or denials in [his] own pleading."  Fed. R. Civ. P. 56(e)(2).  Instead, the non-moving party must come forward with "specific facts showing a genuine issue for trial."  *Id.*  Merriweather has not come forward with evidence to dispute Davenport's affidavit or to refute the signed form stating that prison officials opened envelope 28 in Merriweather's presence.  Consequently, we hold that the district court erred in not dismissing Merriweather's claim as to envelope 28.

The defendants, however, have failed to provide similar evidence with regard to envelopes 27 or 36.  The record contains no similar forms signed by Merriweather for these pieces of mail.  Thus, there still remains an issue of fact with regard to whether prison staff opened these envelopes before they reached Merriweather.  The district court therefore did not err by declining to grant the defendants' summary judgment motion as to envelopes 27 or 36.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (where there is a dispute as to a genuine issue of material fact, summary judgment is inappropriate).

**2.**

We next turn to envelope number 10, which is from "Jerome T. Flynn, Northern District of Indiana Federal Community Defenders, Inc." The envelope does display a "special mail" stamp but does not contain the word "attorney." The defendants assert that the envelope is not properly labeled and therefore they were under no obligation to treat the letter as legal mail. To determine whether the envelope is properly labeled, we must first examine the text of the actual regulation at issue. The pertinent section of the Code of Federal Regulations provides that "correspondence will be handled as special mail only if the envelope is marked with the attorney's name *and an indication* that the person is an attorney, and the front of the envelope is marked 'Special Mail – Open only in the presence of the inmate.'" 28 C.F.R. § 540.19(b) (emphasis added).

The regulation does not specifically require that the envelope contain the word "attorney"; however, it does require an indication that the actual sender of the envelope is an attorney. Envelope 10 states that Flynn is associated with the Northern District of Indiana Federal Community Defenders (the "Defenders"). Merriweather does not argue that all employees of the Defenders are attorneys. It is not beyond the realm of possibility that a clerical or other non-attorney employee could use the Defenders' envelopes to send correspondence to a federal prisoner. However, the force of this argument is undercut by the defendants' stipulation that envelope 22 is properly labeled legal mail. The word "attorney" appears nowhere on envelope 22. Instead, the return address states merely that the sender is the "Appellate Division Chief" of the "Federal Public Defender's Office." If under the defendants' own strict definition envelope 22 is properly labeled legal mail, we have difficulty seeing how envelope 10, with its return address noting the sender is a member of the Defenders, does not also meet the definition. Because the defendants' stipulation that envelope 22 is properly labeled forecloses the defendants' argument that envelope 10 is improperly labeled, we hold that the district court did not err in its ruling that envelope 10 is properly labeled legal mail.

**3.**

Finally, the defendants argue the district court wrongly held as properly labeled legal mail envelopes 13, 14, 17, 18, 21, 24, 30, 31, and 33.  Each of these nine envelopes contains the name of the individual sender, the word "attorney/client," and a stamp saying either "open in presence of inmate only" or "special legal mail."  The defendants assert that these envelopes cannot be legal mail because the envelopes do not unequivocally say that the individual sender is an attorney.

As we noted above, the regulation itself only requires "*an indication* that the person is an attorney" to appear somewhere on the envelope.  28 C.F.R. § 540.19(b) (emphasis added).  The regulation does not require that the attorney designation appear at a particular place on the envelope, such as immediately after the person's name; although, this would undoubtedly be more convenient for the prison's mail processing staff.  Further evidence supporting the conclusion that an "attorney/client" notation satisfies the regulation's requirement that the sender hold himself out as an attorney comes from defendant Zamora's own training outline.  Zamora, as mailroom manager, was responsible for training inmates as to how to advise their attorneys to comply with the mail-labeling regulations.  Zamora's notes label the "Attorney-client phrase" as a key point to highlight with the new inmates during Zamora's training sessions.  Zamora admits that she trained Merriweather as to the proper way to have attorneys label their legal mail. (Zamora Aff. at  3.)  Finally, we note once again the defendants' stipulation that envelope 22 is properly labeled legal mail.  If an envelope that does not even contain the word attorney can meet the regulation's requirement that the envelope contain "an indication that the person is an attorney," then envelopes that do contain the phrase "attorney/client" must meet the regulation's requirement.  20 C.F.R. § 540.19(b).  We therefore hold that the district court did not err in finding that envelopes 13, 14, 17, 18, 21, 24, 30, 31, and 33 were properly labeled legal mail.

**B.**

Having first narrowed the claims at issue, we now turn to the question of whether qualified immunity shields any or all of the defendants. *Sallier*, 343 F.3d at 878. "Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 878 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because such a decision involves solely a question of law, we review a district court's ruling granting or denying qualified immunity *de novo*. *Thomas v. Cohen*, 304 F.3d 563, 568 (6th Cir. 2002).

We have reemphasized the proper analysis to undertake when considering the question of whether qualified immunity applies:

> Qualified immunity involves a three-step inquiry. First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*)). Following the Supreme Court's recent decision in *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2008), this order of inquiry is no longer mandatory. We, however, find the traditional order appropriate in this case and will move first to consider whether Merriweather has established that the defendants' violated a clearly established constitutional right. *See id.* (noting that the traditional order of inquiry "is often appropriate"); *see also Lyons v. Xenia*, 417 F.3d 565, 581 (6th Cir. 2005) (Sutton, J., concurring) ("[I]t often may be difficult to decide whether a right is clearly established without [first] deciding precisely what the constitutional right happens to be.") When analyzing whether a constitutional right was clearly established at the time of the events in question we "must look first to decisions of the Supreme

Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994) (citation omitted).

**1.**

Merriweather claims that the defendants' actions violated his rights under the First, Fifth, and Sixth Amendments. The defendants argue that Merriweather's suit attacks the validity of the BOP special-mail regulation itself and that this court, as well as the Supreme Court, has expressly approved the policy at issue. The defendants reason that because they strictly followed BOP policy as to the requirements for legal mail, Merriweather's claims must fail. Merriweather responds that our precedents recognizing constitutional protections for legal mail foreclose the defendants' argument.

The BOP policy at issue provides that mail will only be treated as special mail if "the envelope is marked with the attorney's name and an indication that the person is an attorney," and "the front of the envelope is marked 'Special mail–Open only in the presence of the inmate.'" 28 C.F.R. § 540.19(b). It is the inmate's responsibility to inform his legal counsel of these requirements. *Id.* If any of the requirements are missing, "staff may treat the mail as general correspondence and may open, inspect, and read the mail." 28 C.F.R. § 540.18(b). The Supreme Court considered the validity of similar provisions in *Wolff v. McDonnell*, 418 U.S. 539 (1974), a case cited by the defendants in support of their argument. In *Wolff*, the Court specifically approved a Nebraska regulation that allowed prison authorities to open inmates' legal mail and search it for contraband without reading the mail's contents as long as the inmate was present. 418 U.S. at 576-77. Nebraska's prior policy had been to read all incoming mail, regardless of whether it was from an attorney. *Id.* at 574. The Justices commented:

> We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, *first* identify

himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar.

*Id.* at 576-77 (emphasis in original). The Supreme Court emphasized the narrowness of its holding by noting it only "assum[ed] some constitutional right is implicated" but did not decide the issue. *Id.* at 576. Whatever that right may be, Nebraska had "done all, and perhaps even more, than the Constitution requires." *Id.* at 577.

Our own circuit has a series of cases dating back more than twenty years establishing the constitutional dimension of a prisoner's right to receive mail. In *Parrish v. Johnson*, we acknowledged that prisoners "have some First Amendment rights in receiving mail" when considering claims brought by Michigan state inmates. 800 F.2d 600, 603 (6th Cir. 1986) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). While "it is clear that prison officials may place reasonable restrictions upon these rights," *id.*, we held that "[a] capricious interference with a prisoner's incoming mail based upon a guard's personal prejudices violates the First Amendment." *Id.* at 604 (citations omitted).

Six years later, we again declared: "A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). In *Knop*, we examined a Michigan state policy that required inmates to "opt-in" to having their privileged mail opened only in their presence. *Id.* At some Michigan state prisons, inmates also had to designate who their attorney was before prison authorities would treat mail from that party as privileged legal mail. *Id.* We upheld the "opt-in" policy as constitutional but nonetheless invalidated its implementation at certain Michigan state prisons by holding that Michigan could not constitutionally require inmates "to designate particular attorneys in order to activate privileged treatment of their legal mail." *Id.*

Fifteen years ago, we combined our prior rulings to hold that a federal prisoner had pled facts sufficient to overcome a qualified immunity defense with regard to prison officials' handling of two pieces of mail. *Lavado v. Keohane*, 992 F.2d 601, 610 (6th Cir. 1993). *Lavado* concerned the application of the very same BOP regulations at issue

in this case. *Id.* at 607 n.2 (quoting 28 C.F.R. §§ 540.18-.19). Lavado alleged that a BOP employee had opened his properly marked legal mail and proceeded to read it in front of Lavado, in violation of BOP policy. When Lavado protested, the BOP employee gave Lavado his business card "so Lavado would be able to spell his name correctly when Lavado sued." *Id.* at 610. We noted that "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Id.* at 607 (citing *Parrish*, 800 F.2d at 603). While declining to find that the violation of the BOP regulations was a *per se* constitutional violation, we noted that opening a prisoner's mail in an "'arbitrary' or 'capricious' fashion" violates the First Amendment. *Id.* at 610 (quoting *Parrish*, 800 F.2d at 604). This was true even though we did not explicitly hold that the Constitution requires legal mail to be opened only in the presence of the inmate. *Id.* at 610 n.5. The BOP employee's "blatant disregard for established regulations [gave] rise to an inference of arbitrary or capricious action" that allowed the case to survive summary judgment and proceed to trial. *Id.* at 611.

Finally, *Sallier* provides an additional example where we explained that the improper opening of legal mail can result not only in a constitutional violation but also in the awarding of monetary damages. Yet another Michigan state prisoner filed suit alleging that state prison officials had wrongfully opened twenty pieces of legal mail. *Sallier*, 343 F.3d at 871. Sallier did not claim that the officials actually read his mail, only that they had delivered the mail to him already opened. *Id.* at 872. Michigan claimed, like the defendants here, that no constitutional right was implicated and certainly not one that was clearly established. *Id.* We noted that letters from attorneys are "the very essence of 'legal mail'" and cited language declaring the ability of a prisoner to communicate via mail in confidence with his attorney to be a "fundamental right." *Id.* (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996)). Because prison officials logged *three* letters as legal mail but still opened them outside of Sallier's presence, the court upheld the jury's $4,000.00 verdict as to those claims. *Id.* at 879-80.

While the Supreme Court has not squarely ruled on the exact constitutional protection prisoner mail should receive, the foregoing history conclusively demonstrates that we have held that improperly opening a prisoner's mail does implicate at least the First Amendment. *See Knop*, 977 F.2d at 1012. Through a series of decisions, prison officials should have been aware that policies that are themselves constitutional can be unconstitutional if improperly applied. *See, e.g.*, *id.*; *Lavado*, 992 F.2d at 610 (violation of First Amendment if legal mail is opened in an arbitrary or capricious fashion). The fact that attorney mail garnered protected status was clear by at least 1987. *Sallier*, 343 F.3d at 878 (citing *Lavado*, 992 F.2d at 610). Prison officials would also be on notice as of 2003 that opening properly marked legal mail alone, without doing more, implicates both the First and Sixth Amendments because of the potential for a "chilling effect." *Sallier*, 343 F.3d at 877. Finally, it has been clear in this circuit for sixteen years that "blatant disregard" for mail handling regulations concerning legal mail violates constitutional protections. *Lavado*, 992 F.2d at 611. Two or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim. *See Sallier*, 343 F.3d at 879-80; *Lavado*, 992 F.2d at 609.

The defendants' admission that Milan employees improperly opened four pieces of legal mail[4] is therefore enough alone to state a claim. Combined with the twelve pieces of mail that we concluded above were properly labeled, Merriweather's evidence far surpasses the three pieces of mail on which we affirmed Lavado's jury verdict. *Lavado*, 992 F.2d at 609. We therefore affirm the district court's ruling that Merriweather's claims are properly characterized as violations of clearly established constitutional rights.

**2.**

The final prong of the qualified immunity analysis requires us to consider whether the defendants acted objectively unreasonably "in light of the clearly established constitutional rights." *Feathers*, 319 F.3d at 848 (quoting *Williams v. Mehra*, 186 F.3d

---

[4]Envelopes 7, 8, 22, and 35. *See* Mag. Report & Rec. at 10-11.

685, 691 (6th Cir. 1999) (*en banc*)).  The defendants argue that the district court erred in holding that Merriweather's allegations satisfy this third prong.  The defendants instead assert that they "conscientiously carried out their mailroom duties in the manner their training specified" and that any errors on their part were merely negligence.  (Def. Br. at 29.)

The record simply does not support the defendants' assertion.  As  supervisor Zamora's training notes indicate, both prisoners and employees learned at the required training sessions that the BOP policy allowed for writing "attorney/client" somewhere on the envelope to satisfy the requirement that the sender holds himself out as an attorney.  The defendants' stipulation regarding envelope 22 lends further credence to Merriweather's assertion that this notation sufficed under the common understanding of the BOP's policy.  Moreover, Merriweather alleges that Zamora told him, "[W]e donot [*sic*] follow case laws, [*sic*] we only follow BOP policy."  (Compl. at 2.)  Zamora does not deny that she made this statement.  Instead, she only states that she does not recall the details of any particular conversations she may have had with Merriweather.  Viewing the facts in the light most favorable to the non-moving party, as we must at the summary judgment stage, Zamora's statement raises an inference that Zamora acted objectively unreasonably in response to Merriweather's complaints that there was a supervisor-encouraged atmosphere of disregard for proper mail-handling procedures. *Cf. Lavado*, 992 F.2d at 610 (finding an inference sufficient to survive summary judgment when BOP employee handed inmate his business card so that he could spell his name correctly in future lawsuit upon hearing of inmate's complaint).  Similarly, fellow mailroom supervisors Culver and Vroman knew of Merriweather's frequent complaints and yet also did nothing to correct even the admitted errors.  We therefore affirm the judgment of the district court that Merriweather has pled facts sufficient to find that Zamora, Culver, and Vroman acted unreasonably such that it was proper to deny them the protections of qualified immunity.

The remaining defendants – Beaudrie, Davenport, Dutton, and Finch – all regularly worked in the Milan mailroom.  The claims against Beaudrie, Davenport, and

Finch represent particularly close cases. Beaudrie admits to having had "some contact" with Merriweather but does "not recall the conversations." (Beaudrie Aff. at 2.) Finch states, "Prior to the filing of this lawsuit, I did not know who Mr. Merriweather was and I have no recollection of any interactions with [him]." (Finch Aff. at 2.) Davenport delivered envelope 28 to Merriweather but did not recall any other interactions. (Davenport Aff. at 2.) Merriweather's complaint does not mention any of them by name or list any specific allegations concerning them, and he does not cite any in his brief to this court. As non-supervisors, it would not be unreasonable for Beaudrie, Davenport, and Finch to follow the instructions of their supervisors, Zamora, Culver, and Vroman. Conversely, Zamora's training notes suggest that Milan employees learned at training sessions that an "attorney/client" indication sufficed. If they were trained in this manner, then the defendants did act unreasonably.

In *Lavado*, we noted that "allegations of blatant disregard for established regulations" can result in a denial of qualified immunity and submission of the question of arbitrariness to the jury. 992 F.2d at 610-11 (collecting similar cases where the evidence required the case to go to the jury). The evidence as to the defendant in *Lavado* was stronger, however, because Lavado's allegations were specific as to the individual and the incident. *Id.* Merriweather's allegations as to these three defendants are not similarly detailed. Because a *Bivens* "complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights," and Merriweather's complaint, as construed by the district court, "lacks any degree of specificity which of [these] named defendants were personally involved in or responsible for each of the alleged violations of his constitutional rights" – especially in comparison to the information about Zamora, Culver, and Vroman's involvement – we hold that the district court erred in denying qualified immunity to Beaudrie, Davenport, and Finch. *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (citing *Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). We consequently reverse the district court's refusal to dismiss Merriweather's suit as to these three defendants.

Defendant Dutton is not similarly situated to his three fellow non-supervisor employees.  Dutton did not submit an affidavit.  Only the statement of his supervisor Culver that "I am unaware of any occasion where Dutton knowingly opened inmate mail" appears in the record.  (Culver Aff. at 8.)  Dutton himself has never denied opening inmate mail; and Culver's affidavit does not state that Dutton could have only worked in the mailroom at times Culver alone served as the supervisor.  Viewing the evidence in the light most favorable to Merriweather, we hold that the district court did not err in its refusal, at this time, to refuse to grant qualified immunity to Dutton.

### III.

We affirm the judgment of the district court denying qualified immunity to defendants Zamora, Vroman, Culver, and Dutton as to envelopes 7, 8, 10, 13, 14, 17, 18, 21, 22, 24, 27, 30, 31, 33, 35, and 36.  We reverse the district court and hold that defendants Beaudrie, Davenport, and Finch are entitled to qualified immunity and that all claims associated with envelope 28 should be dismissed.  Consequently, we remand this case to the district court for further proceedings.