RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0115p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
————————————

AUBREY STANLEY,

          *Plaintiff-Appellant,*

    *v.*

RANDY VINING, Corrections Officer; DAVID BERGH, Warden; UNKNOWN CONTRERAS, Inspector, in their individual and official capacities,

          *Defendants-Appellees.*

No. 08-2634

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 08-00145—Robert Holmes Bell, District Judge.

Submitted: March 10, 2010

Decided and Filed: April 22, 2010

Before: MERRITT, COLE, and COOK, Circuit Judges.

————————————

### COUNSEL

**ON BRIEF:** Aubrey Stanley, Munising, Michigan, *pro se*.

    MERRITT, J., delivered the opinion of the court, in which COOK, J., joined. COLE, J. (pp. 5-10), delivered a separate opinion concurring in part and dissenting in part.

————————————

### OPINION

————————————

    MERRITT, Circuit Judge. Aubrey Stanley, a *pro se* prisoner, appeals a District Court order entered under 28 U.S.C. § 1915(e)(2) dismissing as failing to state a claim his civil rights complaint filed pursuant to 42 U.S.C. § 1983. Stanley claims as a federal constitutional violation the conduct of prison guard, Vining, who allegedly read his "legal mail" in his presence at his prison cell on October 11, 2007, and October 29, 2007, in

1

violation of Michigan Department of Corrections Policy Directive 05.03.188 which he claims prohibits any reading of a prisoner's "legal mail."  He also alleges as a federal constitutional violation that after an exchange of angry words, the guard issued a prison misconduct charge against him, the disposition of which is not described.  Section 1983 – a Reconstruction statute adopted in 1871 – requires that a complaint, in order to state a cognizable claim, must allege "a deprivation of any rights, privileges, or immunities secured by the [federal] Constitution and laws."  42 U.S.C. § 1983.

It has long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983.  Even when a state prisoner is attempting to allege a due process violation for random and unauthorized acts of guards, he must allege the deprivation of a property or liberty interest for which there is no reasonable state remedy provided to correct the deprivation.  *See Paratt v. Taylor*, 451 U.S. 527, 538 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 329 (1986); *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  No such procedural due process violation is stated here.  It is true that Stanley has a liberty interest in receiving his mail.  *See Procunier v. Martinez*, 416 U.S. 396, 448 (1974), *overruled on other grounds by Thornburgh v. Abbot*, 490 U.S. 401 (1989) ("[t]he interests of prisoners and their correspondents in uncensored communications by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest . . . .").  But Stanley received a hearing as a part of the prison grievance procedure.  The hearing officer ruled against Stanley finding that the prison guard had not read his mail in violation of prison policy.  Thus, the defendants have provided Stanley with a post-deprivation hearing and have not violated procedural due process.

As to the possibility of a cognizable substantive due process claim under the First Amendment for denial of access to the courts by interfering with his "legal mail," the prisoner here does not allege that the guard's conduct in any way affected his access to the courts.  *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("In order to state a claim for denial of meaningful access to the courts, however, plaintiffs must plead and prove prejudice stemming from the asserted violation."); *Lewis v. Grider*, 27 F. App'x 282, 283 (6th Cir. 2001) (prisoner's claim for interference with access to courts through opening legal mail failed "as he alleged no prejudice to any pending litigation"); *see also Lewis v. Cook*

*County Bd. of Com'rs*, 6 F. App'x 428, 430 (7th Cir. 2001) (plaintiff could not prevail when he did "not describe a single legal case or claim that was in any way thwarted because the mail room staff opened his legal mail."). Although Stanley has a First Amendment right to be free from unreasonable mail censorship, he has no First Amendment right that prevents a guard from opening his mail in his presence and reading it with an eye to determining if illegal conduct is afoot. The law has not "established that . . . reading [properly marked legal mail] in inmates' presence violates constitutional rights in and of itself." *Lavado v. Keohane*, 992 F.2d 601, 609 (6th Cir. 1993). There must be some allegation that the prison official's conduct amounted to denial of access to the courts or some form of censorship of speech. *See Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001) ("Regarding the alleged reading of Corsetti's legal mail and legal materials, Corsetti has not alleged, nor is there any evidence, that any papers were seized or that the defendants' reading of the papers caused actual injury or 'hindered his efforts to pursue a legal claim.'" (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996))); *see also Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) ("A plaintiff must show that non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim.") (internal quotation marks and citations omitted). There are no such allegations here.

As to the possibility of a cognizable claim under the Sixth Amendment for the deprivation of the right to counsel through the guard's interference with his "legal mail," the prisoner does not allege that the guard's conduct created any barrier to the prisoner's relationship with counsel. Indeed, there is no allegation that any of the mail read by the prison guard was mail from his lawyer or in any way pertained to legal representation. In order to state a § 1983 cognizable claim for deprivation of right to counsel, there must be some allegation indicating an interference with the prisoner's relationship with counsel. In order to state such a claim there must be something more than an allegation that a guard "read" his "legal mail" in his presence and that he was offended or believed this act to be a violation of a state prison regulation. *See Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relationship from intrusion in the criminal setting . . .").

Neither does the allegation that the prison guard issued a misconduct charge against the prisoner over their "legal mail" dispute rise to the level of a valid § 1983 claim. There

is no allegation that the charge interfered in any way with rights under the Due Process or Access to Courts or Right to Counsel constitutional provisions. No facts or theories are stated from which we can devise a plausible constitutional claim. Indeed, we are not even told what the disposition of the charge was, although, as heretofore stated, Stanley received a post-deprivation grievance hearing which satisfied his right to procedural due process arising from his liberty interest in receiving his mail.

We understand that a *pro se* prisoner is unlikely to understand the complexity of federal law regarding prisoner rights, and hence we read a prisoner's complaint liberally. *Cf. Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The appropriate liberal construction requires active interpretation in some cases . . . "). Having done so in this case, we are unable to derive from the complaint any set of facts or legal theory that would give rise to a valid, federal, § 1983 cause of action. Although Stanley does not specify with clarity what constitutional provisions — Due Process, First Amendment, or Sixth Amendment — his claims rest on, we have treated his allegations under all reasonable theories we can imagine. Our dissenting colleague melds together and confuses several theories and comes up with a theory that seems to depend on local differences in how prisons internally interpret a wide variety of regulations from state to state. Our ruling here is that there must be uniform federal constitutional theory from state to state as to each constitutional provision and that no constitutional provision flatly prohibits as unlawful censorship a prison from opening and reading a prisoner's mail unless it can be shown that the conduct interferes with the prisoner's right to counsel or access to the courts or violates his rights of equal protection or procedural due process. We find no per se constitutional rule that such conduct automatically violates a broad, general rule prohibiting censorship, as our dissenting colleague seems to imagine.

Accordingly, the judgment of the District Court is affirmed.

_____

**CONCURRING IN PART AND DISSENTING IN PART**
_____

COLE, Circuit Judge, concurring in part and dissenting in part.

Plaintiff-Appellant Aubrey Stanley alleges that Defendant-Appellee Randy Vining violated his constitutional rights by reading his legal mail on two separate occasions. Although I concur in the majority opinion to the extent that it affirms the dismissal of Stanley's retaliation and supervisor-liability claims, I respectfully dissent from the rest of the majority opinion because I believe Stanley has made out a cognizable legal-mail claim. In affirming the summary dismissal of Stanley's complaint, the majority fails to follow our well-established precedent on this issue. Further, by dismissing his complaint on this procedural posture, the majority potentially exposes Stanley to the penalty provisions of 28 U.S.C. § 1915(g) unjustly, which would limit his access to the courts in the future. For these reasons, I respectfully dissent.

I.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court addressed the constitutional implications of prison policies regarding incoming legal mail. *See id.* at 574-77. By the time the case reached the Supreme Court, the prison authorities had retreated from their original policy, which required that all incoming mail be opened and read, and conceded that "they [could not] open and read mail from attorneys to inmates." *Id.* at 575. The Court held that the policy subsequently adopted by the prison, which prohibited prison officials from reading mail clearly marked as originating from an attorney and required that officials open such mail only in the presence of the prisoner, passed constitutional muster. *Id.* at 576-77. In approving this policy, the Court stated: "As to the ability to open the mail in the presence of inmates, this could in no way constitute censorship, *since the mail would not be read.* Neither could it chill such communications, *since the inmate's presence insures that prison officials will not read the mail.*" *Id.* at 577 (emphasis added).

As we recently noted, "[o]ur own circuit has a series of cases dating back more than twenty years establishing the constitutional dimension of a prisoner's right to receive mail." *Merriweather v. Zamora*, 569 F.3d 307, 316 (6th Cir. 2009). In *Parrish v. Johnson*, 800

F.2d 600 (6th Cir. 1986), for instance, we concluded that "[a] capricious interference with a prisoner's incoming mail based upon a guard's personal prejudices violates the First Amendment" and noted that a number of circuits "have held that mail relating to a prisoner's legal matters may not be read." *Id.* at 604. In *Knop v. Johnson*, 977 F.2d 996 (6th Cir. 1992), we noted that, in addition to First Amendment protections, legal mail concerning criminal matters was subject to the Sixth Amendment's protection of the attorney-client relationship. *Id.* at 1012. Further, while we approved Michigan's requirement that prisoners affirmatively opt-in to have their legal mail specially treated, we concluded that prison officials must give prisoners written notice of the policy, could not require prisoners to opt-in again after being transferred to a different facility, and could not require prisoners to identify specific attorneys whose correspondence would be subject to the policy. *Id.* In *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993), we reversed the grant of summary judgment for the defendants on a claim mirroring Stanley's claims: that a piece of mail from law enforcement officials marked "Special Mail—Open only in the presence of the inmate" was read by a prison official in the prisoner's presence. *Id.* at 603, 611. At that time, we noted that while our case law "may not have clearly established that . . . reading [properly marked legal mail] in inmates' presence violates constitutional rights in and of itself, we have held that opening/reading inmates' mail in 'arbitrary' or 'capricious' fashion does violate inmates' First Amendment rights." *Id.* at 609-10 (footnote omitted).

More recently, in *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003), we affirmed a jury award of damages based on prison officials' opening of a prisoner's constitutionally protected legal mail outside of his presence. *See id.* at 872. In doing so, we expressed "heightened concern" about prison policies dealing with incoming legal mail "because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Id.* at 874; *see also Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) ("[A] review of regulations governing 'legal mail' is subject to a heightened standard."). While *Sallier* addressed only allegations that legal mail had been opened outside the prisoner's presence, *Sallier*, 343 F.3d at 872, we noted that "even constitutionally protected mail can be opened (*although not read*) and inspected for contraband. The only requirement is that such activity must take

place in the presence of the recipient, if such a request has been made by the prisoner." *Id.* at 874 (emphasis added).

## II.

The majority's analysis is flawed because it imposes upon Stanley a higher standard than is required to make out a legal-mail claim, contrary to the constitutional concerns that have given rise to special treatment of inmate legal mail and the clear holdings of our precedent. While our legal-mail cases often have focused on the requirement that legal mail be opened only in the presence of the recipient inmate, this requirement is best understood as a prophylactic rule designed to deter prison officials from reading and tampering with incoming legal mail. Indeed, as noted above, the *Wolff* Court specifically recognized that the rationale behind prohibiting prison officials from opening legal mail outside the recipient prisoner's presence was to deter the officials from reading such mail. *Wolff*, 418 U.S. at 577. Given this relationship between the two policies, the actual reading of a prisoner's legal mail is a more severe constitutional violation than the opening of the mail outside the recipient prisoner's presence because the prohibition on the latter is designed to avoid the former. *Cf. Merriweather*, 569 F.3d at 317 ("Sallier did not claim that the officials actually read his mail, *only that* they had delivered the mail to him already opened." (emphasis added)).

Legal-mail claims rest primarily on First Amendment grounds, but often also implicate the Sixth Amendment, the attorney-client privilege, and access-to-the-courts rights. The majority imposes a higher standard for making out a legal-mail claim by treating Stanley's claim as a standard access-to-the-courts or Sixth Amendment claim. To make out an access-to-the-courts claim, a plaintiff is required to "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Imposing such a requirement on legal-mail claims would undermine the goal of our legal-mail jurisprudence, which is to avoid an unjustifiable chilling of prisoners' First and Sixth Amendment rights, and the attorney-client relationship. *But see Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001) ("Regarding the alleged reading of Corsetti's legal mail and legal materials, Corsetti has not alleged, nor is there any evidence, that any papers were seized or that the defendants' reading of the papers caused actual injury or 'hindered [his] efforts to pursue a legal claim.'" (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996))). The

conduct alleged in Stanley's complaint is just the type of activity that the Constitution prohibits.

Indeed, assuming Stanley's well-pled allegations are true, as we must, Vining's conduct not only violated Stanley's constitutional rights, it violated clearly established law. A review of *Lavado* is revealing. In that case, the plaintiff appealed the district court's grant of qualified immunity to the prison officials. We held that, as of 1993, it was not yet *clearly established* that a prison guard simply reading a prisoner's legal mail in his or her presence was a constitutional violation. *Lavado*, 992 F.2d at 609. However, "it was clearly established . . . that prisoners' mail could not be opened or read in [an] arbitrary or capricious fashion." *Id.* at 610. We then reversed the grant of qualified immunity to the prison official on the plaintiff's claim that a single piece of his mail was read by the guard in his presence because "the allegations of blatant disregard for established regulations give rise to an inference of arbitrary or capricious action." *Id.* Stanley is entitled to this same inference because the regulations[1] and alleged actions at issue here are substantively the same as those at issue in *Lavado*. Assuming , as we must, that Stanley's allegations are true, Vining blatantly disregarded prison regulations when he read Stanley's legal mail, giving rise to an inference that Vining acted arbitrarily or capriciously. Thus, even if the law stood exactly as it did in 1987 when the alleged actions in *Lavado* took place, Stanley not only has made out a valid claim, he has made out a claim that Vining violated clearly established constitutional law.

In fact, our case law since that time has established even more clearly that Vining's alleged conduct was unconstitutional. *See Merriweather*, 569 F.3d at 317 (denying qualified immunity for prison officials who allegedly opened and read legal mail outside a prisoner's presence) ("The fact that attorney mail garnered protected status was clear by at least 1987. Prison officials would also be on notice as of 2003 that opening properly marked legal mail alone, without doing more, implicates both the First

---

[1] The regulations at issue in *Lavado* stated that properly marked legal mail could "not be read" and could be opened "only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail." *Lavado*, 992 F.2d at 607 n.1. Similarly, the regulations at issue in this case state that properly marked legal mail "shall be opened and inspected for money, controlled substances, and other physical contraband in the prisoner's presence. *The content of the mail shall not be read or skimmed.*" Mich. Dep't of Corr. Policy Directive 05.03.118 (emphasis added).

and Sixth Amendments because of the potential for a 'chilling effect.'  Finally, it has been clear in this circuit for sixteen years that 'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections.  Two or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." (citations omitted)).  Indeed, our holding in *Lavado* put prison officials on notice that disregarding prison regulations prohibiting them from reading properly marked legal mail, as is alleged here, gives rise to a constitutional claim.  The majority's attempt to rest its reasoning on *Lavado* finds little support since, in doing so, it impermissibly imports the higher "clearly established" standard for overcoming a qualified immunity defense when no such defense has been pleaded in this case,[2] and it disregards the actual holding of the case.[3]

### III.

The majority opinion departs from our clearly established precedent on this issue and denies Stanley the opportunity to litigate what appear to be valid constitutional claims.  In doing so, the majority risks creating just the kind of chilling effect on prisoner rights that we have noted on several occasions.  The majority certainly does not liberally construe Stanley's complaint despite his status as a pro se litigant.[4]  *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").  Further, by affirming the district court's erroneous dismissal of Stanley's complaint for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2), it potentially, and unjustly, exposes him to the penalty provisions created by the Prison Litigation Reform Act.  *See* 28 U.S.C.

---

[2]In fact, Vining has never presented any defense in this case—the district court dismissed the case under 28 U.S.C. § 1915(e), before Vining was required to respond to Stanley's allegations.

[3]Notably, the magistrate judge's report, which the district court approved and adopted in dismissing Stanley's claims, specifically cited *Lavado* for the proposition that prison officials "may not read" mail from an inmate's attorney.  (Magistrate Judge's Report and Recommendation 4.)

[4]Indeed, the majority opinion suggests that the letters in question might not qualify as legal mail because "there is no allegation that any of the mail read by the prison guard was mail from his lawyer or in any way pertained to legal representation." (Maj. Op. 3.)  This ignores the fact that Stanley consistently refers to the correspondence as legal mail and that, tellingly, the prison officials treated both letters as legal mail by opening them in Stanley's presence.

§ 1915(g).  This means that Stanley not only has been denied his day in court in this case, but he may be barred from filing future complaints in federal court during his incarceration, should any cognizable claims arise.

Therefore, I would reverse and remand this case to the district court to allow Stanley the opportunity to proceed with the legal-mail claim set forth in his complaint. *See Baker v. Mukasey*, 287 F. App'x 422, 425 (6th Cir. 2008) (reversing a *sua sponte* dismissal of a prisoner's complaint alleging that prison authorities opened and read his legal mail outside of his presence for failure to state a claim under § 1915(e)(2) because the prisoner had "at least presented a statement of an actionable claim").