*Saeli v. Chautauqua County*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of December, two thousand twenty-four.

PRESENT:

> DENNY CHIN,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

SAMUEL JAMES SAELI,

> *Plaintiff-Appellant*,

> v.                                                                      No. 23-216

CHAUTAUQUA COUNTY, NY, WILLIAM GENTHER, JASON STEENBURN, THOMAS GILMORE, K. WIELGASZ, LIEUTENANT GRUPA, CHAUTAUQUA COUNTY SHERIFF'S

DEPARTMENT, UNKNOWN EMPLOYEES OF
THE CHAUTAUQUA COUNTY JAIL, UNKNOWN
CHAUTAUQUA COUNTY SHERIFF,

*Defendants-Appellees*.

_____

| | |
|---|---|
| **For Plaintiff-Appellant:** | SANTO TIRALOSI, ROBERT PICCIANO, Rule 46.1(e) Law Students (Nathan Glazer, Christine Hoy, Local Rule 46.1(e) Law Students, Jonathan Romberg, *on the brief*), Seton Hall University School of Law Center for Social Justice, Newark, NJ. |
| **For Defendants-Appellees:** | Michael P. McClaren, Shannon B. O'Neill, Meghan M. Hayes, Webster Szanyi LLP, Buffalo, NY. |

Appeal from a judgment of the United States District Court for the Western District of New York (Charles J. Siragusa, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the February 2, 2023 judgment of the district court is **AFFIRMED IN PART** and **VACATED IN PART**, and the case is **REMANDED**.

Samuel Saeli appeals from the district court's judgment dismissing with prejudice his claims under 42 U.S.C. § 1983 alleging mistreatment while he was a pretrial detainee at the Chautauqua County Jail. The sole issue on appeal relates

to Saeli's constitutional claim that Thomas Gilmore, a corrections officer, improperly searched Saeli's cell for his legal correspondence and then confiscated and transmitted that correspondence to the prosecuting district attorney's office in his state criminal matter. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

We review *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Bangs v. Smith*, 84 F.4th 87, 95 (2d Cir. 2023) (internal quotation marks omitted). Because Saeli was proceeding *pro se* below, we construe his pleadings liberally, "reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted). Nevertheless, his complaint still must plead "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Saeli alleges that, on or about May 22, 2018, while he was detained and awaiting trial at the Chautauqua County Jail, corrections officer Gilmore "conducted a search" of Saeli's cell, "searching for the original and complete

3

document of legal correspondence intended for [his] attorney." J. App'x at 40. Saeli later "was informed that Gilmore lost the original complete documents and only had pictures of the documents that he had taken with his cellphone." *Id.* Saeli also learned that Gilmore "turn[ed] over two (2) edited pages of this legal correspondence" to the prosecutors at the Chautauqua County District Attorney's Office, who "raised the circumstances of that correspondence" at a court proceeding on May 29. *Id.*

Defendants moved to dismiss this claim for failing to state any violation of either Saeli's Fourth Amendment right to be free from unreasonable searches and seizures or his Sixth Amendment right to counsel. The district court granted that motion. As to the Sixth Amendment claim, the district court held that a violation of the attorney-client privilege did not give rise to any constitutional claim, and that Saeli had not "allege[d] any prejudice or actual obstruction to accessing his counsel." *Id.* at 133–35. The district court further concluded that amendment would be futile, and dismissal with prejudice was warranted, because any plausible right-to-counsel claim that Saeli could assert would amount to an "improper collateral attack on [his] criminal conviction," which would be barred

4

by the Supreme Court's decision in *Heck v. Humphrey*. *Id.* at 135 (citing 512 U.S. 477, 487 (1994)).

On appeal, Saeli argues that the district court erred by dismissing his Sixth Amendment claim and by failing to construe his complaint to raise a viable claim for the violation of his First Amendment right to free-flowing legal mail. He also contends, among other things, that the district court incorrectly applied *Heck*'s procedural bar to his claims.

We begin with Saeli's asserted Sixth Amendment right-to-counsel claim, which the district court explicitly considered and rejected. As we have recognized, the "right of the accused '[i]n all criminal prosecutions . . . to have the Assistance of Counsel for his defence' is a direct right, grounded squarely in the text of the Constitution." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) (quoting U.S. Const. amend. VI); *see also Bourdon v. Loughren*, 386 F.3d 88, 96 (2d Cir. 2004) ("The right to effective assistance of counsel . . . is the right of a defendant to be heard on the criminal charges against him."). "[I]n the context of the right to counsel, unreasonable interference with the accused person's ability to consult counsel is itself an impairment of the right." *Benjamin*, 264 F.3d at 185.[1]

---

[1] For this reason, "a prisoner has standing to assert [a Sixth Amendment] right even if the denial

5

Both Saeli and Defendants identify *Benjamin* as setting forth the governing standard for a section 1983 right-to-counsel claim, agreeing that a restriction on a criminal defendant's contact with his attorney is unconstitutional where the restriction "unjustifiably obstruct[s]" or "unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense." *Id.* at 187 (internal quotation marks omitted).

We have said little more about what constitutes an "unreasonable interference" with a criminal defendant's right to access counsel. Nor have we addressed a set of allegations like the ones presented here, let alone clarified whether and how the *Benjamin* standard applies in such circumstances. It bears noting that in *Benjamin* we were reviewing the appropriateness of certain court-ordered measures regarding attorney visitations for pretrial detainees, after the district court had concluded that the prior jail conditions had caused substantial, unpredictable (and unconstitutional) delays for defense attorneys meeting with their clients. *See id.* at 179–81; *see also id.* at 185 (acknowledging "certain restrictions on a detainee's right to counsel may be justified by the constraints of institutional [prison] management"). Moreover, *Benjamin* and the cases to which

of that right has not produced an 'actual injury.'" *Id.* We therefore reject Defendants' argument to the contrary.

6

it cites focus primarily on the issue of access to counsel – factually distinct from the nature of the violation that Saeli alleges here. *See, e.g., id.* at 186–87 (collecting cases); *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978) (affirming remedial order where "attorney visits were made in the general visiting rooms during visiting hours thereby entailing long delays, limiting the attorney's time with his client, and totally vitiating confidentiality"), *rev'd on other grounds, Bell v. Wolfish*, 441 U.S. 520 (1979); *Smith v. Coughlin*, 748 F.2d 783, 789 (2d Cir. 1984) (holding that ban on visits by paralegal personnel violated effective assistance of counsel). Seizing on these differences, Defendants argue that the "single instance of interference with unsent legal mail" alleged by Saeli did not in any way deprive him of the assistance of counsel and therefore cannot amount to unreasonable interference with his Sixth Amendment right. Defs. Br. at 9; *see id.* at 8–13.

Saeli, for his part, points to no authority applying *Benjamin*, but instead asserts that Gilmore's alleged conduct on its face – involving not only improper confiscation but also transmission to the prosecuting district attorney's office – plainly satisfies that standard. Ultimately, his best support for this argument comes from cases outside the Circuit, which have recognized that "opening properly marked legal mail alone, without doing more, implicates" the Sixth

7

Amendment "because of the potential for a chilling effect" on a criminal defendant's ability to freely communicate with his attorney. *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (internal quotation marks omitted); *see Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974) (upholding state regulation allowing prison officials to open inmate legal mail in inmate's presence without reading its contents and observing that such an approach would avoid "censorship" and the "chill[ing]" of legal communications). Other circuits have suggested that "even isolated incidents of improper [legal] mail opening may, in appropriate circumstances, be sufficient to allege a Sixth Amendment violation." *Mangiaracina v. Penzone*, 849 F.3d 1191, 1197 (9th Cir. 2017); *see, e.g.*, *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014) (concluding single incident was sufficient to support a Sixth-Amendment-based claim for injunctive relief where allegations indicated improper opening "was not simply a one-time mistake or confusion over the contours of the [prison] policy"); *Merriweather*, 569 F.3d at 317 (concluding that improper opening of four pieces of legal mail was "enough alone to state a claim"). These examples, Saeli contends, demonstrate that his allegations are more than adequate to plead a Sixth Amendment claim.[2]

---

[2] Neither party mentions *Weatherford v. Bursey*, 429 U.S. 545, 557–58 (1977), in which the Supreme

8

In the end, we need not resolve what standard to apply and whether it has been satisfied because, under any of the standards Saeli identifies, his complaint does not allege sufficient facts to meet federal pleading standards. *See Iqbal*, 556 U.S. at 678; *see also Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 100 (2d Cir. 2022) ("We may affirm on any ground with support in the record." (internal quotation marks omitted)). For starters, Saeli provides scant detail about how he learned of Gilmore's alleged conduct, or the basis for his conclusory assertion that Gilmore "was advised" to and did purposefully search Saeli's cell for his legal correspondence. J. App'x at 40. More to the point, he makes no allegations about whether the document was marked or otherwise identifiable as legal mail, nor does he include any facts regarding how Gilmore would or should have recognized it as such. *Cf. Mangiaracina*, 849 F.3d at 1196–97 (concluding *pro se* inmate sufficiently alleged mail was "properly marked as legal mail" to support

---

Court rejected a section 1983 Sixth Amendment claim that the government had used an informant to impermissibly intrude on a defendant's attorney-client relationship. We subsequently summarized *Weatherford* as holding that, "to establish a Sixth Amendment violation where an informant sat in on defense strategy sessions[,] defendants were required to establish that privileged information had been passed to the government or that the government had intentionally invaded the attorney client relationship, and resulting prejudice." *United States v. Dien*, 609 F.2d 1038, 1043 (2d Cir. 1979), *adhered to on reh'g*, 615 F.2d 10 (2d Cir. 1980). Some circuits have historically looked to *Weatherford* when evaluating Sixth Amendment claims that involve "jailhouse monitoring and document interception." *See, e.g.*, *Williams v. Woodford*, 384 F.3d 567, 584–85 (9th Cir. 2004).

Sixth Amendment claim for two instances of improper mail opening, but affirming dismissal with respect to seven other instances). We also note that Saeli does not allege that this incident had any effect whatsoever on his relationship or ability to communicate with his defense counsel. In short, even construing Saeli's *pro se* complaint liberally, we cannot say that it contains "sufficient factual matter" to state any Sixth Amendment claim for relief. *Iqbal*, 556 U.S. at 678.

For similar reasons, Saeli has failed to state a claim based on his First Amendment "right to the free flow of incoming and outgoing mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). While neither Defendants nor the district court below considered whether Saeli had raised a First Amendment claim, we agree that his allegations possibly implicate such a claim and therefore consider it on appeal. *See Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) (explaining that *pro se* litigants "cannot be expected to know all of the legal theories on which they might ultimately recover"). Nevertheless, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation"; while we have recognized that "as few as two incidents of mail tampering could constitute an actionable violation," we have limited those to situations in which "the incidents suggested an ongoing practice of censorship unjustified by a substantial

10

government interest" or "the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). Because Saeli's complaint provides no details concerning the frequency, willfulness, or effect of the alleged tampering, his allegations are likewise factually insufficient to state a First Amendment claim.

Nevertheless, while we affirm the district court's dismissal of Saeli's complaint, we cannot conclude that it was proper to dismiss his claims with prejudice and without leave to amend. The district court's ruling in that regard was based on its conclusion that any plausible claim would necessarily be barred by *Heck*. But given the nature of the rights implicated by Saeli's allegations (including the First Amendment right to free-flowing legal mail) and the lack of detail in his complaint, it is not at all clear that success in this action "would *necessarily demonstrate* the invalidity of his conviction or sentence." *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007). We therefore vacate that portion of the district court's judgment that dismissed Saeli's claims with prejudice and remand to the district court for consideration of Saeli's request for leave to file an amended complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (explaining that

11

courts generally "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated" (internal quotation marks omitted)).[3]

* * *

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED IN PART** and **VACATED IN PART**, and the case is **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] We note that even in cases where *Heck* does apply, dismissal must be "*without* prejudice, because the suit may be reinstituted should plaintiff's conviction be" vacated at a later date. *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999).