**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL T. HAYES,
　　　*Plaintiff-Appellant*,

v.

IDAHO CORRECTIONAL CENTER;
IDAHO DEPARTMENT OF
CORRECTIONS; SHANNON
CLUNEY; LISA BURKE; JANE
DOES, 1–3,
　　　*Defendants-Appellees.*

No. 14-35078

D.C. No.
1:12-cv-00351-EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted June 6, 2016
Seattle, Washington

Filed March 3, 2017

Before: Richard A. Paez, and Jay S. Bybee, Circuit Judges,
and Jon S. Tigar,[*] District Judge.

Opinion by Judge Paez;
Concurrence by Judge Bybee

---

[*] The Honorable Jon S. Tigar, United States District Judge for the Northern District of California, sitting by designation.

**SUMMARY**[**]

**Prisoner Civil Rights**

The panel affirmed in part and reversed in part the district court's dismissal of a complaint pursuant to 28 U.S.C. § 1915A, and remanded in an action brought pursuant to 42 U.S.C. § 1983 by a prisoner who alleged First Amendment claims arising from prison officials opening his legal mail outside his presence.

The panel held that prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence. The panel further held that a plaintiff need not allege a longstanding practice of violating his First Amendment rights in order to state a claim for relief on a direct liability theory, nor does a plaintiff need to show any actual injury beyond the free speech violation itself to state a constitutional violation.

The panel held that the district court properly dismissed two other counts of alleged improper mail opening because plaintiff had not met his burden of plausibly alleging that the item opened outside his presence was legal mail, and because mail from the United States courts is not legal mail.

The panel held that plaintiff waived any challenge to the dismissal of his policy-based claims by failing to discuss the claims in his opening brief.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Concurring in the judgment, Judge Bybee agreed with the conclusion that prisoners have a general First Amendment right to be present when legal mail related to a civil matter is inspected.  He wrote separately to clarify that merely negligent conduct on the part of prison officials is not sufficient to state a claim.

---

## COUNSEL

Harry Williams IV (argued), Law Office of Harry Williams, Seattle, Washington, for Plaintiff-Appellant.

Jacob H. Naylor (argued) and Kirtlan G. Naylor, Naylor & Hales P.C., Boise, Idaho, for Defendants-Appellants Idaho Correctional Center and Lisa Burke.

Leslie M. Hayes (argued), Deputy Attorney General; Steven L. Olsen, Chief of Civil Litigation; Lawrence G. Wasden, Attorney General; Office of the Attorney General, Boise, Idaho; for Defendants-Appellees Idaho Department of Corrections and Shannon Cluney.

---

## OPINION

PAEZ, Circuit Judge:

Michael T. Hayes appeals the dismissal of his First Amendment challenge to prison officials opening his legal mail outside his presence. Hayes's complaint alleged four instances of prison employees delivering legal mail addressed to Hayes that had been opened before delivery. The complaint also alleged that the prison and prison officials maintained a policy or custom of ignoring the improper handling of legal mail. The district court dismissed the complaint at the pre-screening stage pursuant to 28 U.S.C. § 1915A. On appeal, Hayes argues that the district court erred in dismissing his First Amendment claims against Defendant Lisa Burke, a mail room supervisor, and his policy-based claims against Defendants Shannon Cluney, Idaho Department of Corrections ("IDOC"), and Idaho Correctional Center ("ICC"). *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

## I.

At all times relevant to this appeal, Hayes was housed at ICC, a privately run IDOC facility. Hayes alleges in his Second Amended Complaint, the operative complaint, that ICC mail room staff illegally opens inmates' legal mail, "especially inmates who are charged with sex offences [*sic*]."

He alleges that Defendant Burke improperly opened Hayes's legal mail outside his presence on four occasions.[1]

On December 28, 2010, Hayes received a piece of mail that had already been opened. The envelope was "clearly marked as attorneys at law," and the complaint identified the law firm that had sent the mail. Hayes filed a grievance regarding this incident, and the prison responded that "there was a piece of tape on the envelope but [prison officials] could not tell if it were [*sic*] sent through the mail this way or opened by mistake here or at another location."[2]

On March 2, 2011,[3] Hayes received another piece of legal mail that had been opened before he received it. Hayes filed a grievance related to this incident, and the prison's response stated: "This piece of mail was opened in error and not read."

Hayes alleges that on June 2, 2011, another piece of "mail that was clearly marked as legal mail" was opened outside his presence. His complaint alleged that "this legal mail was sent . . . through the prison's regular mail systems" and "not through case managers or correctional counselors who always usually deliver legal mail to inmates." The prison's response to his grievance indicated that "[t]he item [prison staff]

---

[1] We accept as true all allegations of material facts in the Second Amended Complaint, and we construe the facts in the light most favorable to the plaintiff. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[2] Hayes attached the grievances he filed, as well as the facility's responses, to the Second Amended Complaint.

[3] The grievance form indicates that the incident actually took place on March 1, 2011.

opened on June 2 was not from an attorney or from the courts, therefore it is not legal mail per [our] policy."

Finally, on June 13, 2011, "legal mail was once again delivered to" Hayes which had been "opened before it was delivered." Hayes attached a grievance form related to this incident. The response from the facility indicated that "[t]he item received on June 13 was from the US Courts and logged opened in error. This issue has been discussed with staff."

The complaint identified Hayes's cell mates at the time of the incidents as eyewitnesses, and Hayes attached a supporting affidavit from Robert Lavin, his cell mate during two of the incidents. Hayes also alleged that "a lot of correspondence that qualified as constitutionally protected legal mail [had been] illegally opened by ICC mail room staff." Hayes explained that Defendant Cluney, the Deputy Warden of Virtual Prisons at IDOC, "has not stopped his subordinates from creating a 'policy or custom'" of illegally opening legal mail. Hayes described this policy as "longstanding pervasive and well documented." He also identified five attorneys who had sent mail to Hayes that had been illegally opened over the years. Hayes did not allege that any of the legal mail that had been opened was related to a criminal matter; rather, the mail appears to have been related to civil matters.

On September 13, 2011, Hayes filed a complaint pursuant to 28 U.S.C. § 1983 in Idaho state court. Defendants removed the case to federal court. In its initial review order, the district court dismissed Hayes's complaint with leave to amend. The court found that three of the claims of illegal mail opening had deficiencies that Hayes could attempt to cure in an amended complaint, and that the remaining

incident (on March 2, 2011) "appear[ed] to be an isolated incident" insufficient to state a constitutional claim. After Hayes filed a Second Amended Complaint,[4] the district court dismissed the complaint with prejudice. The court explained that the complaint did not identify the sender of the June 2, 2011 or June 13, 2011 mail, and the grievance response for the June 13, 2011 mail indicated that it was from the United States courts rather than from an attorney. With respect to the December 28, 2010 incident and the March 2, 2011 incident, the court found that Hayes had pled sufficient facts to allege improper mail opening but that these were isolated incidents insufficient to state a constitutional claim against Defendant Burke. The court also dismissed Hayes's *Monell* policy or custom claims against Defendants Cluney, IDOC, and ICC because Hayes had simply repeated the claims set forth in the original complaint, which the court had dismissed as insufficient in its initial review order. Hayes timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we review de novo a district court's dismissal for failure to state a claim under 28 U.S.C. § 1915A. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). "Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

---

[4] Hayes filed a first amended complaint that was virtually identical to the original complaint, but he subsequently sought leave to file a second amended complaint, which the district court granted. The court never formally reviewed the first amended complaint.

*Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (internal quotation marks omitted).

## III.

## A.

Hayes argues that the First Amendment protects his right to be present when his civil legal mail is opened. We agree.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court addressed a challenge to a rule that allowed prison guards to open all legal mail, but only in the presence of the prisoner to whom the mail was addressed. The Court held that the rule was permissible because "the inmate's presence insures that prison officials will not *read* the mail," and therefore would not "chill [attorney-client] communications." *Id.* at 577 (emphasis added). The Court noted, however, that "the constitutional status of the rights asserted . . . is far from clear," *id.* at 575, and the Court did not define the source or scope of these rights since it concluded that the inmate's presence adequately protected any rights at stake. After *Wolff*, the Supreme Court clarified that a regulation that burdens prisoners' constitutional rights is "valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In *Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989), the Court explained that the *Turner* test applies to restrictions on incoming mail to prisoners.

In *Nordstrom v. Ryan*, we recently held that a single instance of a guard *reading* a prisoner's mail was sufficient to establish a violation of the Sixth Amendment right to

counsel.**[5]** 762 F.3d 903. We recognized that Nordstrom's allegation "that his right to privately confer with counsel has been chilled" represented "a plausible consequence of the intentional reading of his confidential legal mail." *Id.* at 911; *see also Casey v. Lewis*, 43 F.3d 1261, 1269 (9th Cir. 1994) (noting in the context of an access-to-courts claim that "legal mail may not be read nor copied without the permission of the inmate"), *rev'd on other grounds*, 518 U.S. 343 (1996). In *Mangiaracina v. Arpaio*, No. 14-15271 (9th Cir. Mar. 3, 2017), filed concurrently with this opinion, we held that the Sixth Amendment, in addition to prohibiting guards from reading prisoner legal mail, also protects the right of a prisoner to be present while legal mail relating to criminal proceedings is opened.

In both *Nordstrom* and *Mangiaracina*, we declined to analyze the plaintiffs' claims under any constitutional provisions besides the Sixth Amendment, since the claims related to correspondence about criminal matters and therefore fell squarely within the scope of that Amendment.

---

**[5]** We previously addressed prisoners' legal mail rights in *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended on denial of reh'g by* 135 F.3d 1318 (9th Cir. 1998), in which we held that mail from a court rather than a lawyer did not qualify as protected legal mail. We did not address prisoners' rights with respect to clearly marked legal mail from a lawyer, and we explicitly declined to decide "whether mail clearly sent from a lawyer to an inmate but lacking the 'Legal Mail' designation may be opened outside the presence of the inmate." *Id.* In *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989), a probation officer visiting a prisoner handed a piece of legal mail to a guard, who then opened the mail outside the prisoner's presence. We recognized that "the relevant event for purposes of analyzing [the defendant's] culpability is the alleged constitutional injury, the guard's opening of the letter outside [the prisoner's] presence" but concluded that the named defendant—the probation officer—could not be held liable.

*Mangiaracina*, __ F.3d at __; *Nordstrom*, 762 F.3d at 909. We recognized in *Nordstrom*, however, that other courts have "analyzed claims regarding the confidentiality of attorney-inmate communications under various constitutional principles, including the First Amendment right to freedom of speech and the Fourteenth Amendment rights to due process and access to the courts, or some combination of these rights." 762 F.3d at 909.[6]

The Supreme Court has recognized that prisoner correspondence at least implicates First Amendment rights. In *Procunier v. Martinez*, 416 U.S. 396, 408 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. 401, the Court held that censorship of correspondence between inmates and those outside of prison impermissibly burdened the First Amendment free speech rights of the non-prisoners, regardless of whether the inmates' rights were implicated. Later, in *Turner*, 482 U.S. at 84–91, the Court recognized that a statewide rule barring prisoner-to-prisoner correspondence across penal institutions implicated prisoners' First Amendment rights. We have also recognized the First Amendment rights of prisoners to "send and receive mail," *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995), though we have not yet addressed prisoners' First Amendment right to have legal mail opened in their presence.

Relying in part on *Procunier* and *Turner*, several of our sister circuits have held that opening legal mail outside the presence of the addressee inmate burdens First Amendment

---

[6] Because Hayes argued only that his confidential attorney-client communications are protected by the First Amendment, we do not address whether additional constitutional provisions also protect these communications.

rights.  The Third Circuit has reasoned that a state policy or custom of

> opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech.  The practice deprives the expression of confidentiality and chills the inmates' protected expression, regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications.  This is so because the only way to ensure that mail is not read when opened is to require that it be done in the presence of the inmate to whom it is addressed.

*Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (internal quotation marks and alterations omitted).  The Eleventh Circuit has observed that "given their incarceration and often distance from their attorneys, prisoners' use of the mail to communicate with their attorneys about their criminal cases may frequently be a more important free speech right than the use of their tongues."  *Al-Amin v. Smith*, 511 F.3d 1317, 1333–34 (11th Cir. 2008).  In addition to the Third and Eleventh Circuits, the Second, Sixth, and Tenth Circuits have recognized that the opening of legal mail outside of a prisoner's presence implicates First Amendment rights.  *See Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) ("[W]e have held that improperly opening a prisoner's mail does implicate at least the First Amendment."); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (explaining that "a

prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment" and that "a prisoner has a right to be present when his legal mail is opened," but noting that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation"); *Ramos v. Lamm*, 639 F.2d 559, 582 (10th Cir. 1980) (holding that, at least where the prison offered no justification for opening prisoners' mail to attorneys outside their presence, this practice was "invalid under the First and Fourteenth Amendments"), *abrogated in part on other grounds by Thornburgh*, 490 U.S. 401.

The reasoning of these decisions by our sister circuits is persuasive. When a prisoner receives confidential legal mail that has been opened and re-sealed, he may understandably be wary of engaging in future communication about privileged legal matters. Moreover, prisoners' communications with civil attorneys often relate to lawsuits challenging the conditions of confinement in the prison or wrongful conduct of prison employees. When prison officials open legal mail, prisoners may justifiably be concerned about retaliation from the very officers the prisoner has accused of wrongdoing. Prisoners may also worry that the contents of the letters could be passed along to the facility's lawyers, who would learn of the prisoner's legal strategy. *See Gomez v. Vernon*, 255 F.3d 1118, 1123–24 (9th Cir. 2001).

To make matters worse, prisoners' avenues of confidential communication with attorneys are limited. In Idaho, the current policy on telephones and electronic communications provides that "[a]ttorney communications using email, digital photograph, and video messaging are not

privileged, are archived and may be reviewed."**7**    Idaho Department of Corrections Standard Operating Procedure, *Telephones and Electronic Communications: Inmate*, Control No. 503.02.01.001, *available at* https://www.idoc.idaho.gov/content/policy/3743, at 7. "Voice messages left by an attorney for an offender are not privileged and are recorded and can be monitored." *Id.* at 6. Beyond these regulatory barriers, legal representation is by nature a document-heavy enterprise, and the contents of documents cannot always be communicated by phone and should not always be communicated in a non-privileged email. In addition, some prisoners are represented by counsel from a different part of the state or from out of state, making in-person visits costly and time consuming. Hayes, for example, was incarcerated in Boise but was represented in this appeal by a Seattle-based attorney. These factors, present in Idaho and elsewhere, highlight the immense undertaking—for both attorney and client—of litigating from prison, and the importance of confidential legal mail in making that undertaking feasible.

As we have previously observed, "[i]t takes no stretch of imagination to see how an inmate would be reluctant to confide in his lawyer about the facts of the crime, perhaps other crimes, possible plea bargains, and the intimate details of his own life and his family members' lives, if he knows that a guard is going to be privy to them, too." *Nordstrom*,

---

[7] We take judicial notice of the IDOC's Standard Operating Procedure, as it is "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see United States v. Thornton*, 511 F.3d 1221, 1229 n.5 (9th Cir. 2008) (taking judicial notice of a federal Bureau of Prisons policy statement).

762 F.3d at 910.  Because "the only way to ensure that mail is not read when opened is to require that it be done in the presence of the inmate to whom it is addressed," *Jones*, 461 F.3d at 359 (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1456 (3d Cir. 1995)), a prisoner who receives legal mail that has been opened and re-sealed may be justifiably concerned about the confidentiality of his communications.  We therefore agree with the conclusion of the Sixth Circuit that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim."  *Merriweather*, 569 F.3d at 318.

In sum, we recognize that prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence.

**B.**

We turn to whether Hayes alleged facts sufficient to state a First Amendment claim.  We hold that he has.

The district court properly dismissed two counts of alleged improper mail opening.  For the incident that Hayes alleged occurred on June 2, 2011, the response from the facility indicated that the item was not legal mail.  In his Second Amended Complaint, Hayes did not clarify who sent the mail or whether it was properly marked as "legal mail." The district court therefore properly concluded that Hayes had not met his burden of plausibly alleging that the item opened outside his presence was protected legal mail.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The district court also properly dismissed Hayes's claim with respect to the June 13, 2011 incident because the grievance response indicates that the mail was from the United States courts.  "Mail from the courts, as contrasted to mail from a

prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996). Accordingly, the First Amendment does not prohibit opening such mail outside the recipient's presence.

The other two instances alleged by Hayes, however, do state a First Amendment claim. With respect to the mail that Hayes received on December 28, 2010, Hayes alleged that the sender was a law firm. The facility's response to Hayes's grievance regarding the incident acknowledged that "there was a piece of tape on the envelope" but stated that prison officials "could not tell if it were [*sic*] sent through the mail this way or opened by mistake here or at another location." Hayes both identified the sender of the mail and plausibly alleged that it had been opened by a prison official outside his presence.

With respect to the mail that Hayes received on March 2, 2011, he similarly alleged that his legal mail had been opened outside his presence. The facility's response to his grievance stated: "This piece of mail was opened in error and not read." Prison officials then confirmed that they had opened the piece of legal mail that Hayes received on March 2, 2011 outside his presence.

The district court held that because the December 28, 2010 incident and the March 2, 2011 incident were isolated interferences with Hayes's mail, Hayes could not proceed on his First Amendment claim against Defendant Burke. But a plaintiff need not allege a longstanding practice of violating his First Amendment rights in order to state a claim for relief on a direct liability theory. In *Sallier v. Brooks*, 343 F.3d 868, 879 (6th Cir. 2003), the Sixth Circuit upheld a jury's award of punitive and compensatory damages against two

prison mail room clerks for three counts of improper mail opening where, in all three instances, "the defendants listed the letters on the legal mail log as legal mail" and "simply failed to follow established procedures requiring [the plaintiff's] presence before the letters were opened." The court held that "[s]uch a failure, after recognition of the letters as protected legal mail, is objectively unreasonable." *Id.* at 880. Later, in *Merriweather*, 569 F.3d at 317, the Sixth Circuit concluded that "[t]he defendants' admission that [prison] employees improperly opened four pieces of legal mail is . . . enough alone to state a claim" (footnote omitted).

Defendants argue that Hayes has failed to allege anything beyond negligence. As noted above, however, Hayes has alleged that ICC mailroom staff illegally opened inmates' legal mail, "especially inmates who are charged with sex offences [*sic*]." While Hayes does not allege that he was convicted of a sex offense, we take judicial notice of the fact that he was convicted of "lewd and lascivious conduct" with a "minor under 16."[8] *IDOC Offender Search Details*, Idaho Dep't of Corrections (Nov. 10, 2016), *available at* https://www.idoc.idaho.gov/content/prisons/ offender_search/detail/20633. Reading Hayes's pro se complaint generously, as we must, we therefore conclude that Hayes has alleged a plausible claim that his protected mail was arbitrarily or capriciously opened outside his presence on two separate occasions. Nothing further is required.

---

[8] We take judicial notice of the IDOC's Offender Database, as it is "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Nor is Hayes required to "show any actual injury beyond the free speech violation itself to state a constitutional claim." *Al-Amin*, 511 F.3 at 1333.**[9]**   Rather, the injury that Hayes alleges is "that his right to privately confer with counsel has been chilled." *Nordstrom*, 762 F.3d at 911.  This injury is sufficient to state a First Amendment claim. *See Laird v. Tatum*, 408 U.S. 1, 11 (1972) (explaining that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental [actions] that fall short of a direct prohibition against the exercise of First Amendment rights," where "the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging."); *cf. Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (holding, in the context of a First Amendment retaliation claim, that "the injury asserted is the retaliatory accusation's chilling effect on Hines' First Amendment rights. . . .  Hines' failure to demonstrate a more substantial injury does not nullify his retaliation claim.").

Finally, we recognize that the fact that a prison's actions "burden[] prisoners' First Amendment rights does not, however, tell us whether the policy [or practice] is

---

**[9]** In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court held that a group of prisoners challenging the adequacy of prison law libraries were required to show actual injury in order to mount a successful access-to-courts challenge.  Both the Third and the Eleventh Circuits have held that "the actual injury requirement applies to access-to-courts claims but not to free speech claims." *Al-Amin v. Smith*, 511 F.3d 1317, 1341 (11th Cir. 2008); *see Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("We reject the argument . . . that the Supreme Court's decision in *Lewis v. Casey* . . . require[s] that the plaintiffs prove some injury-in-fact beyond the infringement of constitutionally protected speech.").

constitutional. Prisoners necessarily sacrifice many of the constitutional rights available to non-incarcerated citizens." *Jones*, 461 F.3d at 360. Instead, "[t]he relevant question, as articulated by the Supreme Court in *Turner*, is whether the legal mail policy is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner*, 482 U.S. at 89). Here, Defendants have not yet had the opportunity in district court to present evidence of a legitimate penological reason for opening Hayes's mail outside his presence.

Thus, we conclude that Hayes has stated a First Amendment claim on the facts alleged, and the district court erred in dismissing this claim at the pre-screening stage. *See Merriweather*, 569 F.3d at 318. On remand, Defendant Burke may offer a legitimate penological reason for opening Hayes's legal mail at either summary judgment or trial.

## IV.

Finally, Hayes waived any challenge to the dismissal of his policy-based claims. *See Monell*, 436 U.S. 658. We "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 979 F.2d 721, 726 (9th Cir. 1992) (citation omitted). Hayes's opening brief does not discuss his *Monell* policy or custom claims against Defendants Cluney, IDOC, and ICC, nor does it cite any authority related to these claims. We therefore decline to address Hayes's argument, raised for the first time in his reply brief, that the district court erred in dismissing his policy-based claims.

\*      \*      \*

For the reasons set forth above, we reverse the district court's dismissal of Hayes's First Amendment claim against Defendant Burke and affirm the dismissal of the policy-based claims against the remaining defendants.

The judgment is **AFFIRMED in part, REVERSED in part,** and **REMANDED.**

The parties shall bear their own costs on appeal.

BYBEE, Circuit Judge, concurring in the judgment:

I concur in the conclusion in Part III.A of the majority opinion, that prisoners have a general First Amendment right to be present when legal mail related to a civil matter is inspected. I write separately because I don't think the majority has explained with sufficient clarity what is required to state a First Amendment claim under 42 U.S.C. § 1983. I am deeply concerned that the majority opinion's characterization of *Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014), and out-of-circuit cases which dealt with either intentional acts or pattern-and-practice allegations, Maj. Op. 8–9, 10–16, may mislead the district courts and the parties into thinking that merely negligent conduct is sufficient to state a claim under 42 U.S.C. § 1983. It is not. If it was once not clear, it is now beyond question that § 1983 requires proof of intentional, not merely negligent, acts depriving a party of his constitutional rights.[1]

---

[1] Portions of this concurrence are identical to portions of my concurrence in the companion case, *Mangiaracina v. Apraio*, No. 14-15271, — F.3d — (9th Cir. 2017). This case addresses the First

I

In *Paul v. Davis*, the Supreme Court rejected the notion that § 1983 had converted "the Fourteenth Amendment [into] a font of tort law to be superimposed upon whatever systems may already be administered by the States." 424 U.S. 693, 701 (1976). It was easier to say than to enforce, and the Supreme Court had its own missteps in determining what kind of constitutional torts § 1983 covers. In 1977, the Court granted certiorari in *Procunier v. Navarette*, 434 U.S. 555 (1978), to decide whether prison officials' negligent handling of a prisoner's outgoing mail could be the basis for damages under § 1983. The Court never got there; instead, it decided the case on the basis of qualified immunity and left to another day the critical question of whether § 1983 covered negligent conduct. *Id.* at 559 n.6. *See Baker v. McCollan*, 443 U.S. 137, 138 (1979) (explaining how *Procunier* dodged the question). Two years later, in *Parratt v. Taylor*, 451 U.S. 527 (1981), the Court considered whether § 1983 was a proper vehicle to compensate a prisoner under the Due Process Clause for a negligent loss of his property. The Court said that "the alleged loss, even though negligently caused, amounted to a deprivation" and was actionable under § 1983. *Id.* at 536–37. Five years later, the Court overruled *Parratt* in *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986). This time the Court concluded that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328. The Court stated that "lack of due care suggests no more than a failure to measure up to the conduct of a

Amendment right to be present when legal mail is inspected by prison guards; Mangiaracina addresses the Sixth Amendment right to be present. The principles are nearly the same, and my concerns are the same.

reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Id.* at 332. "Our Constitution," the Court wrote, "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Id.* Nevertheless, the Court would "not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care." *Id.* at 334.

Notwithstanding the Court's reservation of judgment, *Daniels*'s logic has since been extended, amendment by amendment, to other fundamental rights protected by the Bill of Rights. And, so far as I can determine, no court has held that a § 1983 claim can be proved by mere negligent conduct. For example, in the First Amendment free exercise context, negligence on the part of a government official is not enough to show a violation of constitutional rights sufficient to state a claim for relief under § 1983. *See Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (dismissing § 1983 claim because "an isolated act of negligence would not violate an inmate's First Amendment right to free exercise of religion"); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause."); *Lewis v. Mitchell*, 416 F. Supp. 2d 935, 944 (S.D. Cal. 2005) (holding more than negligence is required to state a valid § 1983 claim for violation of prisoner's First Amendment right to freely exercise religion); *Shaheed v. Winston*, 885 F. Supp. 861 (E.D. Va. 1995) (finding "defendants [sic] actions were negligent, not intentional, and the plaintiffs may not rely on § 1983 as a basis for this claim"), *aff'd on other grounds*, 161 F.3d 3 (4th Cir. 1998) (unpublished).

Similarly, in access-to-court cases, also under the First Amendment, the circuit courts have uniformly held that negligence is not sufficient to raise a claim under § 1983. The Seventh Circuit, for example, has found that "a mere isolated incident of negligence . . . does not rise to the level of a constitutional violation actionable under section 1983." *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992); *see also Crawford-El v. Britton*, 951 F.2d 1314, 1318 (D.C. Cir. 1991) (holding that intentional interference with access to court violates Constitution)); *Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995) (holding that negligent conduct in misrouting a form does not violate the First Amendment's right to petition).

In the Fourth Amendment context, the Supreme Court has held that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (citations omitted). The Supreme Court found support for this holding in the text of the Fourth Amendment, since seizure does not imply an "unknowing act," as well as the history of the Fourth Amendment, which was addressed to "'misuse of power,' not the accidental effects of otherwise lawful government conduct." *Id.* (citation omitted). The Court elaborated:

> [I]f a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. And the situation would not change if the passerby happened, by lucky chance, to be a serial

murderer for whom there was an outstanding arrest warrant—even if, at the time he was thus pinned, he was in the process of running away from two pursuing constables. It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Id.* at 596–97. We have similarly held that to state a Fourth Amendment claim against a government investigator for submitting false and material information in a warrant affidavit, "a § 1983 plaintiff must show that the investigator 'made *deliberately* false statements or recklessly disregarded the truth in the affidavit' and that the falsifications were 'material' to the finding of probable cause." *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (emphasis added) (citation omitted).

In the Eighth Amendment context, the Supreme Court has found that more then negligence is required to raise a claim for cruel and unusual punishment. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In *Estelle*, the Supreme Court rejected an Eighth Amendment claim based on inadvertent failure to provide adequate medical care:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

429 U.S. at 107. In *Wilson*, the Court added that "'[i]t is *only* such indifference' that can violate the Eighth Amendment; allegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent . . . diagnos[is]' simply fail to establish the requisite culpable state of mind." 501 U.S. at 297 (quoting *Estelle*, 429 U.S. at 105–06) (alteration in original) (citations omitted).

These same considerations should inform our judgment about the First Amendment right to be present when legal mail related to a civil matter is inspected. There is nothing about the attorney-client relationship that suggests that merely inadvertent conduct that touches on that relationship is a constitutional violation. The courthouse custodian who accidentally walks in on an attorney-client conference may "chill" their conversation, but—without more—has done nothing actionable under § 1983. Similarly, the mail clerk who accidentally opens legal mail, seals it up, and notes "opened by mistake, and not read" has not violated the First Amendment, even if the prisoner-recipient is unhappy to receive his mail in that format. If the prisoner doubts the veracity of the mail clerk, or has seen a broad pattern of

improperly opened legal mail, the prisoner should allege that the act is intentional or that an inference of intent should be drawn from the pattern and practice. To fail to recognize the importance of alleging intentional conduct would be to risk strict liability claims under § 1983, something no court has ever approved.

## II

Applying the above principles to Hayes's claim, Hayes has alleged a "policy and practice" of illegally opening inmates' mail—particularly "inmates who are charged with sex offenses." These are sufficient facts to allege a constitutional violation at the pleading stage of the litigation, even though the State has offered an account of the opening of Hayes's incoming legal mail on December 28, 2010 and March 2, 2011 that calls his allegations into question.

## A

The majority opinion focuses on whether the *number* of incidents was sufficient to state a cause of action but overlooked the question of the *nature* of the incidents alleged. The opinion concludes that two incidents in two months "state[] a First Amendment claim on the facts alleged."[2] Maj. Op. at 18. To reach this conclusion, the opinion relies heavily

---

[2] On remand, the majority will allow the State to offer a "legitimate penological reason" for opening Hayes's legal mail. Maj. Op. at 18. However, the test created in *Turner v. Safley*, 482 U.S. 78 (1987), was directed at prison *regulations*. *Id.* at 89. I am not sure how the test even applies to inadvertent conduct. What penological reason can the State offer if someone opened the letter by mistake? The opinion thus strongly suggests that mistake or inadvertence is not a "legitimate penological reason." If so, Hayes's claim nearly sounds in strict liability.

on our recent decision in *Nordstrom* for the proposition that a "single instance" of improper reading of a prisoner's mail can give rise to a constitutional violation. Maj. Op. at 8–9 (citing *Nordstrom*, 762 F.3d 903). However, the single incident in *Nordstrom* was sufficient because it "was not simply a one-time mistake or confusion over the contours of the [prision] policy . . . the [prison d]irector ha[d] personally informed [Nordstrom] that prison officials are permitted to read his legal mail." *Nordstrom*, 762 F.3d at 911–12. There, as our opinion noted, the prison officials openly read Nordstrom's mail in front of him and over his protests. *Id.* at 906. And, the prison's response to the prisoner's grievance was not that this was a mere accident or an isolated instance of reading legal mail, but rather that its policy permitted guards to read legal mail as long as it was done in the prisoner's presence. *Id.* at 907 (noting that the prison director's response to grievance reasoned that "[s]taff is authorized to scan and is not prohibited from reading the mail to establish the absence of contraband and ensure the content of the mail is of legal subject matter" (alteration in original)). The prison regulations, in fact, prohibited reading outgoing attorney-client correspondence. *Id.* at 910–11. *Nordstrom* is consistent with the principle that § 1983 covers only intentional acts affecting constitutional rights.

The majority opinion later concludes that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." Maj. Op. at 14 (alteration in original) (quoting *Merriweather v. Zamora*, 569 F.3d 307, 318 (6th Cir. 2009)). I regret that the majority has introduced an "arbitrary or capricious" standard into the evaluation of § 1983 claims under the First Amendment. That standard is well-known in the administrative law context, where it is prescribed by statute, 5 U.S.C. § 706(2)(A), but it is not a

familiar standard for judging constitutional torts. The majority borrows the phrase from the Sixth Circuit, where it apparently originated in *Parrish v. Johnson*, 800 F.2d 600 (6th Cir. 1986). *See id.* at 604 ("[T]his case concerns Turner's arbitrary opening and reading of Giles' personal mail. . . . A capricious interference with a prisoner's incoming mail based upon a guard's personal prejudices violates the First Amendment."). But we shouldn't mistake "arbitrary and capricious" conduct in this context as something less than "intentional conduct." The case that gave us the unfortunate phrase, *Parrish*, involved intentional conduct: the prisoner, who was paraplegic, "testified that [a prison guard] would randomly open and read his personal mail and that [the guard] would also taunt him by waving the open mail in front of him." *Id.* at 603. The court observed that the case did not involve "a regularly applied regulation . . . or a random interference with a prisoner's mail." *Id.* at 604. *Parrish* involved an allegation that the defendant had intentionally violated the prisoner's rights. Other Sixth Circuit cases, which have continued to use the imprecise "arbitrary and capricious" language, also involve allegations of intentional or pattern-and-practice conduct. *See*, *e.g.*, *Merriweather*, 569 F.3d at 317 (finding that sixteen instances of improperly opened legal mail were sufficient to state a cause of action); *Sallier v. Brooks*, 343 F.3d 868, 872, 879–80 (6th Cir. 2003) (upholding a damage award where the prisoner could prove that officials had deliberately opened three pieces of legal mail and the prisoner "had filed a written request to have such mail opened only in his presence"); *Lavado v. Keohane*, 992 F.2d 601, 610 (6th Cir. 1993) (holding it was sufficient that the prisoner alleged that a Bureau of Prisons employee had "blatant disregard for established regulations [that gave] rise to an inference of arbitrary or capricious action" and noting that the prisoner had alleged that defendant "read

Lavado's properly marked correspondence and proceeded to give Lavado his business card so Lavado would be able to spell his name correctly when Lavado sued"); *Reneer v. Sewell*, 975 F.2d 258, 259–60 (6th Cir. 1992) ("[I]f the mail was actually read, and this action was motivated by retaliation as plaintiff alleges, such behavior by prison officials might [be] . . . arbitrary action . . ."). The decisions cited by the majority from other circuits are not to the contrary. *See*, *e.g.*, *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008) (finding prisoner alleged "pattern and practice of opening . . . clearly marked attorney mail"); *Jones v. Brown*, 461 F.3d 353, 359–60 (3d Cir. 2006) (noting prison policy required officials to open all mail outside the presence of prisoners in order to screen for anthrax and "[a] state pattern and practice, or, as is the case here, explicit policy, of opening legal mail outside the presence of the addressee inmate" violates constitutional rights); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" (citations omitted)).

I wish the majority had simply stated the obvious for the benefit of the parties and the district court:  in order to survive a motion to dismiss—much less prevail on the merits—the plaintiff must allege some kind of deliberate action on the part of prison officials.  An allegation that prison officials opened a prisoner's legal mail, without an allegation that the mail was deliberately and not negligently opened, is not sufficient to state a cause of action under § 1983.

B

The opinion concludes that Hayes has alleged sufficient facts to state a claim for two instances of improper legal mail opening (December 28, 2010 and March 2, 2011). With respect to the December incident, Hayes alleged he received "legal mail . . . which had already been opened." The prison's response to the grievance he filed includes information gathered from various employees in the prison. The opinion notes that Case Manager Fink stated that "there was a piece of tape on the envelope but [prison officials] could not tell if it were [sic] sent through the mail this way or opened by mistake here or at another location." Maj. Op. at 5 (citation omitted). The opinion leaves out the other parts of the prison's response, which note that the staff member in charge initially responded "[w]e would have marked opened in error if we had opened it" and the "mail room supervisor . . . indicated they did not open the offenders [sic] legal mail and if this would have occurred they would have indicated this on the envelope." In the second incident, the prison admitted that Hayes's mail was opened in error. The prison also said that the mail was not read.

These allegations, by themselves, are not sufficient to state a cause of action under § 1983. In the end, however, I join the majority in concluding that Hayes has said enough at this stage of the proceedings to allege a constitutional tort. As the majority explains, Hayes pled that Defendant Cluney, the Deputy Warden of Virtual Prisons at the Idaho Department of Correction (IDOC), "has not stopped his subordinates from creating a 'policy or custom'" of "illegally opening inmates clearly marked legal mail outside the presence of the inmate," and that mail room supervisor Lisa Burke "continues to implement these 'illegal' policies and

customs." Hayes also states in his filings that this practice is particularly prevalent for "inmates who are charged with sex offenses." Although IDOC's official policy complies with the requirements of today's holding, outling that for incoming legal mail, "[a] unit staff member will open and inspect the envelope in the presence of the inmate but will not read it," Idaho Dep't. of Corr., *Standard Operating Procedure, Mail Handling in Correctional Facilities, Control Number 402.02.01.011*, https://www.idoc.idaho.gov/content/policy/588, at 9, 12, that written policy alone is insufficient if prison staff are intentionally violating that policy for sex offenders. Showing a "blatant disregard for established regulations" is sufficient to raise an inference of intentional conduct to survive a motion to dismiss. *Lavado*, 922 F.2d at 611.

At this stage in the litigation, we must accept all allegations of material fact as true and construe them in the light most favorable to the plaintiff. *Nordstrom*, 762 F.3d at 908. Construing Hayes's pro se complaint liberally, I conclude that Hayes has sufficiently claimed that someone is intentionally, rather than merely accidentally, opening his legal mail in violation of his First Amendment rights. He may or may not be able to prove his claim, but he has said just enough to get the opportunity.

On that basis, I concur in the judgment.