Concurrence by Judge BYBEE
OPINION
PAEZ, Circuit Judge:
Nick Mangiaracina appeals the dismissal of his First and Sixth Amendment claims arising from jail employees opening legal mail outside his presence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.
I.
At the time of-the events described in the operative complaint (the third amended complaint), Nick Mangiaracina was incarcerated as a pre-trial detainee in Mari-copa County’s Fourth Avenue Jail in Phoenix, Arizona. The jail’s stated policy is to open legal mail addressed to a prisoner only in the presence of that prisoner. See Maricopa County Jails, Rules and Regulations for Inmates § 17, at 24.[1] Mangiaraci-na alleged, however, that his mail was repeatedly opened “outside [his] presence” in contravention of this policy.[2] The complaint included descriptions of nine specific instances of alleged improper mail opening.
Mangiaracina alleged that in September 2011, he received a letter from his attorney that had been “opened and taped shut.” He further alleged that on March 23, 2012, he “mailed a [manila] envelope that was sealed to [his] attorney....” While an officer was sorting mail later that evening, Mangiaracina saw that his letter had been opened. Mangiaracina was then “allowed to reseal it and it was mailed.”
On November 9, 2012, a jail employee opened an incoming letter from Mangiara-cina’s attorney. Mangiaracina attached the mail room’s response to his grievance regarding the incident, which stated: “The mailroom documents any legal mail that come[s] in torn-open or damaged. According to our records you[r] legal mail was delivered to the 4th Ave. Jail sealed and un-opened.” A second response from the jail stated that during mail distribution, “it was noted that inmate Mangiaracina’s legal mail envelope had been cut open and stapled closed prior to it being delivered to [the Fourth Avenue Jail].... [T]he reason [it was open] was unknown” to the employee responding to the grievance, “as it had been delivered to [the Fourth Avenue Jail] that way for distribution.”
*1194 Mangiaracina also described several incidents of improper mail opening in January 2013. He alleged that two outgoing letters to his attorneys were opened on January 9. With respect to one of these letters, Mangiaracina explained that he had complained to a correctional officer, who “said he knew about it and [said] it was de[a]lt with.” Mangiaracina alleged that a few days later, an incoming letter from an attorney was improperly opened. On January 22, 2013, a jail employee again “opened a letter going out to [his] attorney.”
According to the complaint, problems with the handling of Mangiaracina’s legal mail persisted despite his repeated complaints and grievances. He alleged that on February 27, 2013, a jail employee “opened a letter going out to” his attorney. Finally, on March 12, 2013, a jail employee opened an incoming letter from an attorney. Man-giaracina attached his grievance related to the March 12 incident, which explained that the “legal mail was opened [and] taped shut prior to delivery to inmate,” and that it “came up in [the] mail that way.” Mangiaracina received the same response from the mailroom that he had received with respect to the November 9, 2012 incident: “The mailroom documents any legal mail that come[s] in torn-open or damaged. According to our records you[r] legal mail was delivered to the 4th Ave. Jail sealed and un-opened.” There was no further response explaining whether (or why) the mail was opened at the jail prior to delivery.
In Mangiaracina’s complaint, he further alleged that he had “[six] pending trials in superior court[] and [one] federal case pending.”[3] In describing his injury resulting from the improper opening of his legal mail, Mangiaracina alleged that he and his two “attorneys are af[]raid to communicate by mail which is hard as I have so many cases and so much pap[]erwork to go back and forth.” He further explained that his “right to confidentiality and privacy was violated” and that his “defense strategy and [his] rights in general were just shredded.” Mangiaracina also reported that an officer had told him that “they can open [legal mail] outside our presence if they want to,” that “there is no law against it,” and that “they just do it in our presence as a [courtesy].”
Mangiaracina initially filed suit in Arizona superior court pursuant to 28 U.S.C. § 1983, alleging violations of his First and Sixth Amendment rights by a number of jail employees and John Doe defendants. Defendants removed the case to federal court. The district court found that remov *1195 al was proper and dismissed the original complaint for failure to state a claim, but' granted Mangiaraeina leave to amend. After a series of amendments, the court ultimately dismissed Mangiaracina’s Third Amended Complaint with prejudice. The district court noted that Mangiaraeina had failed to specifically allege that the pieces of mail were marked as “legal mail” and that, for most of the instances, he failed to explain how he knew the mail was opened outside his presence. The court acknowledged that Mangiaraeina did provide additional details for the incidents occurring in September 2011, on March 23, 2012, and on November 9, 2012. The court concluded, however, that even assuming the three items were properly marked as legal mail, these “isolated incidents” did not violate Mangiaracina’s constitutional rights. Man-giaracina timely appealed.
II.
We review de novo a district court’s dismissal of a complaint under 28 U.S.C. § 1915A for failure to state a claim. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). We construe all facts in the light most favorable to the plaintiff, and we construe a pro se complaint liberally. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). “Pro se complaints ... may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Id. (quotation marks omitted).
III.
A.
Mangiaraeina argues that the district court erred in dismissing his Sixth Amend-' ment claim. We reverse the district court’s dismissal of this claim as to two counts of illegal mail opening and affirm the dismissal of the remaining counts.
The Supreme Court addressed the inspection of prisoners’ legal mail in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In Wolff, a group of prisoners challenged, inter alia, a prison regulation that authorized correctional officers to open and inspect all incoming mail for contraband. The regulation included legal mail but provided that such mail was to be inspected in the presence of the prisoner to whom it was addressed. The plaintiffs argued that legal mail should be exempted from the inspection requirement entirely. The Court held that “inspection or perusal” of legal mail was permissible. Id. at 576, 94 S.Ct. 2963. In the Court’s view, the challenged regulation could not have the effect of “ehill[ing attorney-client] communications, since the inmate’s presence insures that prison officials will not read the mail.” Id. at 577, 94 S.Ct. 2963 (emphasis added). Because the inmate’s presence adequately protected any rights at stake, the Court did not identify the constitutional source or scope of these rights. Id. at 575-77, 94 S.Ct. 2963.
We recently addressed prisoners’ legal mail rights in Nordstrom, 762 F.3d 903. In that case, a prisoner alleged that he had written a letter to his criminal attorney and that a correctional officer, instead of inspecting the letter in Nordstrom’s presence before sealing and sending it, stood in front of him and read the letter. We held that this event, though isolated, sufficiently alleged a violation of Nordstrom’s .Sixth Amendment right to counsel. Although the case concerned improper reading rather than improper opening of legal mail, we noted that “the practice of requiring an inmate to be present when his legal mail is opened is a measure designed to prevent officials from reading the mail in the first place.” Id. at 910 (citing Wolff, 418 U.S. at 577, 94 S.Ct. 2963); see also Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), amended on denial of rehearing by 135 *1196 F.3d 1318 (9th Cir. 1998) (declining to decide “whether mail clearly sent from a lawyer to an inmate but lacking the ‘Legal Mail’ designation may be opened outside the presence of the inmate”); Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989) (recognizing that “the relevant event for purposes of analyzing [the defendant’s] culpability is the alleged constitutional injury, the guard’s opening of the letter outside [the prisoner’s] presence.”). Thus, we have recognized that prisoners have a Sixth Amendment right to confer privately with counsel and that the practice of opening legal mail in the prisoner’s presence is specifically designed to protect that right.
Other circuit courts have similarly recognized the importance of this practice. In Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006), the Third Circuit recognized, in the context of a First Amendment challenge, that opening legal mail outside the addressee’s presence
deprives the expression of confidentiality and chills the inmates’ protected expression, regardless of the state’s good-faith protestations that it does not, and will not, read the content of the communications. This is so because the only way to ensure that mail is not read when opened is to require that it be done in the presence of the inmate to whom it is addressed.
Id. (internal quotation marks, alteration, and citation omitted). The Sixth Circuit has similarly acknowledged that a “prisoner’s interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process” and has determined that “[t]here is no penological interest or security concern that justifies opening such mail outside of the prisoner’s presence when the prisoner has specifically requested otheiwise.” Saltier v. Brooks, 343 F.3d 868, 877-78 (6th Cir. 2003); see also, e.g., Al-Amin v. Smith, 511 F.3d 1317, 1331 (11th Cir. 2008) (“[I]n-mates have a constitutionally protected right to have their properly marked attorney mail opened in their presence.”). The same concerns animate Mangiaraeina’s Sixth Amendment challenge, which is predicated on the chilling of his protected communications with criminal attorneys. See Merriweather v. Zamora, 569 F.3d 307, 317 (6th Cir. 2009) (“[0]pening properly marked legal mail alone, without doing more, implicates both the First and Sixth Amendments because of the potential for a ‘chilling effect.’ ” (quoting Sallier, 343 F.3d at 877)). We therefore now clarify that, under Nordstrom, prisoners have a Sixth Amendment right to be present when legal mail related to a criminal matter is inspected.
B.
Mangiaracina has alleged sufficient facts to state a claim for improper opening of his incoming legal mail on November 9, 2012 and March 12, 2013. For each of these incidents, Mangiaracina attached his grievance form and the response he received from jail officials. For the November 9 incident, the response confirmed that the mail had been delivered to the jail sealed but had been opened and stapled shut prior to delivery to Mangiaracina. For the March 12 incident, Mangiaracina specifically alleged in his grievance that the letter had been “opened [and] taped shut prior to delivery.” The allegations in the complaint and attached documents sufficiently allege that these two pieces of mail were opened outside Mangiaracina’s presence. In the two responses from the facility, jail officials characterize both pieces of mail as “legal mail.” At the pleading stage, these allegations are sufficient to allege that the envelopes were properly marked as legal mail. Further, Mangiaracina alleges that he was informed by an officer that jail employees “can open [legal mail] outside our presence if they want to,” that *1197 there is no law against it, and that “they just do it in our presence as a [courtesy].” These two counts therefore sufficiently allege violations of Mangiaracina’s right to have his confidential, properly-marked legal mail opened in his presence. For the remaining counts, the district court correctly determined that Mangiaracina failed to allege that the mail was properly marked as legal mail, so these counts were properly dismissed.
The absence of a clear pattern beyond these two incidents does not preclude relief. In Nordstrom, we recognized that even a single instance of improper reading of a prisoner’s mail can give rise to a constitutional violation. Thus, even isolated incidents of improper mail opening may, in appropriate circumstances, be sufficient to allege a Sixth Amendment violation. Cf. Merriweather, 569 F.3d at 317 (6th Cir. 2009) (“Two or three pieces of [a prisoner’s legal] mail opened in an arbitrary or capricious way suffice to state a [First Amendment] claim.”).
Defendants argue that this case is distinguishable from Nordstrom because Mangiaracina does not allege that jail officials ever read his mail. But indeed, how could he? If the practice of opening legal mail in the presence of the prisoner is designed to prevent correctional officers from reading it, then the natural corollary is that a prisoner whose mail is opened outside his presence has no way of knowing whether it had been (permissibly) inspected or (impermissibly) read. In other words, Mangiaracina could not in good faith have alleged that jail employees had read his mail, since he had no basis for knowing what had happened to his mail prior to delivery. See Scott Dodson, New Pleading, New Discovery, 109 Mich. L. Rev. 53, 54 (2010) (“[P]laintiffs proceeding with claims that depend upon facts exclusively in the hands (or minds) of defendants and third parties may find themselves in a Catch-22: plaintiff needs those facts to plead her claim properly and survive a ‘Twiqbal’ motion to dismiss, but she may not be able to discover those facts without first surviving the motion to dismiss.”).
Nordstrom presented the rare situation in which a prisoner actually witnessed a correctional officer open and read his legal mail. To hold that an officer could stop short of a prisoner’s cell, open and read a letter, and then deliver it to the prisoner without giving rise to an actionable claim would elide the central holding of Nord-strom.
Nor do Defendants identify any legitimate penological interest that would be served by opening legal mail outside Mangiaracina’s presence. Jails and prisons may impose certain restrictions on incoming mail, so long as the restrictions are “reasonably related to legitimate penological interests.” Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); see Thornburgh v. Abbott, 490 U.S. 401, 413-14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). We defer to the judgment of corrections authorities, particularly with regard to matters of security, because we recognize that “[r]unning a prison [or jail] is an inordinately difficult undertaking” with which prison or jail authorities have particular expertise. Turner, 482 U.S. at 84-85, 107 S.Ct. 2254. This deference, however, only comes into play when the facility offers a legitimate justification for the challenged practice. “[I]f the prison fails to show that the regulation is rationally related to a legitimate penological objective, we do not consider the other factors” of the Turner test. Askker v. California Dep’t of Corr., 350 F.3d 917, 922 (9th Cir. 2003).
Here, the stated policy of the Maricopa County Jails is to open all legal mail in the presence of the prisoner, and Defendants have identified no reason in their briefing *1198 for deviating from’ this policy. No special deference is therefore required. See Al-Amin, 511 F.3d at 1331 (11th Cir. 2008) (“[0]pening an inmate’s attorney mail in his presence ... ‘fully accommodates the prisoner’s rights at de minimis cost to valid penological interests.’ ” (quoting Turner, 482 U.S. at 91, 107 S.Ct. 2254)).
Nevertheless, Defendants attempt to argue on appeal that any deviations were isolated and accidental. We have already explained why even isolated incidents may support a Sixth Amendment claim. See Part III.B, supra. Additionally, whether an isolated incident was also accidental is a question of fact that we do not resolve on a motion to dismiss. At this stage, we accept all allegations of material fact as true and construe them in the light most favorable to the plaintiff. Nordstrom, 762 F.3d at 908.
As we have emphasized in the past, “[a] criminal defendant’s ability to communicate candidly and confidentially with his lawyer is essential to his defense.” Nordstrom, 762 F.3d at 910. Mangiaracina alleged that jail officials had repeatedly opened his legal, mail and that an officer had told him that “there is no law against” opening legal mail before delivering it to a prisoner and “they just do it in [the prisoner’s] presence as a courtesy.” Mangiaraci-na was justifiably concerned that his attorney-client communications would not be kept confidential. An a result, Mangiaraci-na and his attorneys were “af[]raid to communicate by mail,” which he described as “hard as I have so many cases and so much paperwork to go back and forth.” By necessity, prisoners and pre-trial detainees rely heavily on the mail for communication with their attorneys. The Maricopa County jail system does not allow incoming phone calls or provide access to e-mail, and out-, going phone calls can only be placed as collect calls. See Maricopa County Jails, Rules and Regulations for Inmates § 25, at 35. Moreover, as Mangiaracina noted in his complaint, criminal cases often involve paperwork that can only feasibly be transported by mail. As Mangiaracina put it, his “right to confidentiality and privacy was violated as well as [his] defense strategy and [his] rights in general were just shredded.” These allegations are sufficient to state a claim for violation of Mangiaraci-na’s Sixth Amendment right to counsel.
C.
Mangiaracina also argues that the district court erred in dismissing his First Amendment claim. In Hayes v. Idaho Correctional Center, No. 14-35078, 849 F.3d 1204, 2017 WL 836072 (9th Cir. Mar. 3, 2017), filed concurrently with this opinion, we held that the First Amendment protects prisoners’ right to have legal mail opened in their presence. Accordingly, we reverse the dismissal of Mangiaracina’s First Amendment claim, and we remand to the district court for consideration of this claim in light of Hayes, if necessary.
[[Image here]]
For the reasons set forth above, we reverse the district court’s dismissal of Mangiaracina’s Sixth Amendment and First Amendment claims with respect to the incidents on November 9, 2012 and March 12, 2013. We affirm the district court’s dismissal of the remaining counts of alleged improper mail opening.
The judgment is AFFIRMED in part, REVERSED in part, and REMANDED.
Each party shall bear its own costs on appeal.

. We take judicial notice of the Maricopa County Jails Rules and Regulations for Inmates, as the document is not subject to reasonable dispute” and “can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.” Fed. R. Evid. 201(b)(2); see United States v. Thornton, 511 F.3d 1221, 1229 n.5 (9th Cir. 2008) (taking judicial notice of a federal Bureau of Prisons policy statement).. Relevant portions of the regulations are contained in Appendix 1 to the Replacement Opening Brief and Exhibit 1 to the Brief of Amici Curiae National Association of Criminal Defense Lawyers, Arizona Attorneys for Criminal Justice, Prison Law Office, American Civil Liberties Union, and ACLU of Arizona,

 In reviewing an order dismissing a com Plaint for failure to state a clalm’ we accePt a11 allegations of material facts as true, and we construe the facts in the light most favorable to the plaintiff. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014).

. We grant Defendants’ motion to take judicial notice of the six criminal indictments pending against Mangiaracina in Maricopa County Superior Court at the time of the incidents. We also grant Defendants’ motion to take judicial notice of the docket sheet in the oriminal case in the United States District Court for the District of Arizona in which Mangiaracina was sentenced in February 2006 to seventy-eight months of imprisonment and thirty-six months of supervised release. See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.” (internal quotation marks and citation omitted)).
It is not clear from the record whether the federal case that Mangiaracina referred to in his complaint was related to his prior conviction. Defendants do not contest that Mangiar-acina’s six pending trials in Superior Court were criminal trials, nor do they contest that Mangiaracina’s correspondence with his attorneys was related to his state or federal criminal cases. If on remand and after discovery, it becomes clear that some of Man-giaracina’s legal correspondence was civil in nature, the district court can address any incidents related to civil legal mail in light of Mangiaracina’s First Amendment claim. See Part III.B, infra.